**Rodney PICKARD, et al., Plaintiffs,**

v.

**CITY OF GIRARD, et al., Defendants.**

**No. 4:98 CV 2289.**

United States District Court,
N.D. Ohio.

Sept. 30, 1999.

Cleveland, OH, Adam E. Carr, Williams, Sennett & Scully, Twinsburg, OH, for plaintiffs.

Nick Tomino, Reminger & Reminger, Cleveland, OH, Adam E. Carr, Williams, Sennett & Scully, Twinsburg, OH, for defendants.

## MEMORANDUM ORDER AND OPINION

ECONOMUS, District Judge.

This matter is before the Court upon the Motion for Summary Judgment by Defendants, City of Girard ("Girard"), Frank Staley ("Staley"), Michael Williams ("Williams"), and Anthony Ross ("Ross") ("the Girard Defendants") (Dkt.# 21).

In their complaint, Plaintiffs allege due process violations (Count One—Mark Estes ("Estes") and the Girard Defendants, Count Two—the Girard Defendants)[1], negligence (Count Three), negligent and/or intentional assault and battery (Count Four) and intentional infliction of emotional distress (Count Five)[2].

In Counts One and Two, the defendants are sued in their individual capacities under 42 U.S.C. § 1983, which states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

William T. Doyle, Hull, Ryan & Doyle, Cleveland, OH, Matthew F. Browarek,

1. Plaintiffs use the phrase "shocks the conscience" in both Counts One and Two, apparently stating violations of substantive due process in each Count. However, Count One is properly stated as an excessive force claim under the Fourth Amendment.

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court rejected various lower courts' reliance on substantive due process standards in evaluating claims of excessive use of governmental force where such claims were covered by explicit provisions in the Constitution. *Id.* at 392, 109 S.Ct. 1865. Reasoning that the "guideposts for responsible decision-making in [the substantive due process] area are scarce and open-ended," *Albright v. Oliver*, 510 U.S. 266 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (*quoting Collins v. Harker Heights,*

503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)), the Court pointed to the Second Circuit's four-factor substantive due process test derived from the "shocks the conscience" concept as an illustration of what should not be used when an enumerated constitutional right is available as a source of protection. *Graham,* 490 U.S. at 392–93, 109 S.Ct. 1865. Instead, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright,* 510 U.S. at 273, 114 S.Ct. 807, (*quoting Graham,* 490 U.S. at 395, 109 S.Ct. 1865).

2. The Girard defendants are only named in the Counts One and Two in the Complaint.

District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1996). Jurisdiction is predicated upon 28 U.S.C. § 1331.[3]

### Law

FED.R.CIV.P. 56(c) governs summary judgment and provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *Id.* The non-

moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

### Facts

The following facts are taken from the sworn testimony of Plaintiff, Rodney Pickard ("Pickard") given during the Pre–Discipline Hearing of Estes and Staley held on February 20, 1998 ("Transcript of Pre–Disciplinary Hearing: Testimony of Rodney Pickard"). For the purpose of this motion for summary judgment the following facts will be taken as true.

On November 28, 1997, Estes, an off-duty police officer, negligently failed to yield before making a left turn and collided into the vehicle driven by Pickard. While Pickard and his passenger, Plaintiff Lucrettia Winland ("Winland"), were inspecting the damage to Pickard's vehicle, Estes suggested that they return to their vehicles and remove them from the road into an adjacent parking lot.[4] Pickard and Estes each moved their cars to the lot in front of the Amen's Corners tavern.

When Staley, a Girard police officer, arrived, he obtained Pickard's and Estes' insurance information and driver's licenses and returned to his cruiser. Soon thereafter, an argument erupted between Estes and Pickard, and Estes shouted a racial epithet. Estes then punched Pickard.

Officer Staley, who was sitting in his cruiser at the time that the altercation began, radioed for assistance and then proceeded to intervene. As Staley began to pull the parties apart, Estes continued to

---

**3.** Both of the plaintiffs and all of the defendants in this case were Ohio residents on the date the Complaint was filed.

**4.** "Well, [Winland] jumped out of the car, I jumped out the car to see what kind of dam-

ages there was. And at that time the person was driving the other car told me to pull it in the parking lot, and I pulled it in the parking lot." Transcript of Pre–Disciplinary Hearing: Testimony of Rodney Pickard at p. 5.

shout racial insults directed at the Plaintiffs' interracial relationship. Estes allegedly yelled, "I ought to shoot you nigger." Staley eventually separated the parties and restored order.

Shortly thereafter, Williams, a Captain of the Girard Police Department, arrived in response to Staley's call for assistance. Staley informed Williams that an argument had occurred but made no report of racial slurs or the physical attack. Williams then spoke with the Plaintiffs, who insisted that Estes was intoxicated and had physically attacked them. In spite of Plaintiff's allegations, the parties were permitted to leave the scene without any action taken against Estes.

*Analysis*

After reviewing the Girard Defendants' motion, the Court determined that Estes' status, that is, whether he was "acting under color of state law" is an element of the Girard Defendants' motion for summary judgment, and, therefore, must be determined by this Court. Estes never filed a motion for summary judgment, however, the Court issued an Order on August 30, 1999, notifying the parties of the Court's intention to grant summary judgment to Estes *sua sponte.* The Order granted the parties ten days to file briefs with respect to the issue of whether Estes was "acting under color of state law." (Dkt.# 27). On September 16, 1999, Plaintiffs filed their Memorandum In Support of Finding Defendant Estes Actions as Under Color of Law (Dkt.# 28). Estes did not file any response pursuant to the court's order.

### I. "Color of State Law"

A threshold issue in any 42 U.S.C. § 1983 action is whether there is any "state action" involved. "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975) (*quoting Screws v. United States,*

325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). The fact that a police officer is on or off duty, or in or out of uniform is not controlling. *Stengel,* 522 F.2d at 441. "It is the nature of the act performed, not the clothing of the actor or even the status of being on or off duty, which determines whether the officer has acted under color of law." *Id.*

The Sixth Circuit most recently addressed the issue of whether an off-duty officer's actions were "under color of state law" in *Mooneyhan v. Hawkins,* 129 F.3d 1264 (Table), 1997 WL 685423 (6th Cir.(Ky.)). Although the facts of *Mooneyhan* render the opinion inapposite to the case *sub judice,* the Sixth Circuit's recapitulation of the law in *Mooneyhan* is quite relevant:

> Courts have held that off-duty officers act under color of state law when they purport to exercise official authority. Such manifestations of official authority include flashing a badge, identifying one's self as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations. *See e.g., Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir.1980) (officer acted under color of state law where he had authority under law to carry weapon, argument between plaintiff and officer arose as a result of officer's performance of his official duties on a prior occasion, and threats made to officer by plaintiff communicated to officer through police agency); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975) (officer acted under color of state where he intervened in an altercation, used his department issued mace and handgun, and attempted to arrest those individuals involved in altercation); *Pickrel v. City of Springfield,* 45 F.3d 1115, 1117–118 (7th Cir.1995) (officer acted under color of state law where he served as a private security guard at a McDonald's restaurant wearing his police uniform and badge, and arrested plaintiffs);

*United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir.1991) (Sheriff's deputy acted under color of state law where he beat his wife's former lover while telling victim that he had special authority as a Sheriff's deputy to do so, told victim he could shoot him because he was a Sheriff, deputy, [sic] and he summoned other police officers to the scene to follow victim to the edge of town), *cert. den'd* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992). In each one of these cases, the officer either engaged in official conduct, purported to be engaged in official conduct, and/or used a weapon issued to the officer by the law enforcement agency. *Id.* 1997 WL 685423 at *3.

■ In summary, there appear to be two circumstances where an off-duty police officer's actions are "state action": (1) when a police officer undertakes purely private action while invoking his authority as a police officer, or as a result of his role as a police officer; and (2) when an off-duty police officer undertakes an official duty. In each of these situations, a plaintiff, injured by the police officer's action, can establish "state action."

Although Plaintiffs rely on the rationale in *Stengel, supra,* to establish the latter type of "state action," the court will address the facts in the case *sub judice* under both theories.

■ With respect to the first type of "state action," Pickard's testimony reveals that Estes did not identify himself as a police officer or direct the Plaintiffs by exerting his authority as a police officer. In fact, Plaintiffs admit that they were not aware that Estes was a police officer until *after* the altercation occurred.[5] At the time of the accident, Plaintiffs believed that the instructions to clear the road were nothing more than a personal communication between two private citizens following a traffic accident.

With respect to establishing the second type of "state action," the sole act of suggesting that the cars should be moved into the parking lot, even if prompted by some official duty, did not convert Pickard's subsequent actions into "state action."

Plaintiffs suggest that discovery might produce evidence that Girard police officers are "on-duty" 24 hours-a-day and that it is a Girard police officer's duty to clear wreckage from an accident scene as in *Stengel.* However, even *assuming arguendo* that such regulations exist, Plaintiffs cannot establish that Estes' actions were "under color of state law."

In *Stengel,* the evidence which established "state action" included the officer's use of mace and a pistol issued by the police department, and testimony of the chief of police that, when faced with an incident posing potential harm to the public, an officer is required to act "in any type of police or criminal activity 24 hours a day." *Stengel,* 522 F.2d at 441. The evidence also included an explicit determination by the police department in its internal affairs investigation of the incident making "a specific finding that [Belcher's] actions were [performed] in the line of duty." *Id.*

Simply stated, the nature of the "official act" committed by Estes simply does not rise to the level of the acts performed by the off-duty police officer in *Stengel.* Furthermore, in *Stengel,* the plaintiffs' injuries were a direct result of the police officer's execution of his duty, that is, his attempt to arrest the plaintiffs. In the case *sub judice,* Pickard's injuries were not sustained as a result of Estes' execution of his duty, that is, his suggestion that the parties remove their cars from the road.

---

5. "Q: How many times did he threaten to shoot you?
A: Well, I heard it one time.
Q: At this time did you know that he was a police officer?

A: No I did not."
Transcript of Pre–Disciplinary Hearing: Testimony of Rodney Pickard at p. 12–13.

■ Finally, contrary to Plaintiff's argument, Staley and Williams' arrival on the scene did not lend an "air of official authority" to Estes' actions. Plaintiffs cite *U.S. v. Coleman*, 628 F.2d 961, 964 (6th Cir.1980) (*citing with approval Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)) for the rule of law that indicia of official involvement may convert private action into state action.[6] However, *Coleman* further states that "the actions of a private party will not be attributed to the state unless the state actually *compels* the action." *Id.* (Emphasis added.) Pickard has not produced any evidence that Staley, the only officer on the scene at the time, compelled Estes' verbal or physical assault.

As a matter of fact, *assuming arguendo* that Estes was a "state actor" when he suggested that the parties move their cars, Staley's arrival on the scene effectively ended any "state action" on the part of Estes. Staley collected licences and proceeded with the investigation as if it were a routine traffic accident between private parties. Pickard's testimony reveals that Staley treated Estes as a private citizen involved in a traffic accident, not a fellow officer on the scene.

Consequently, when Estes assaulted Pickard, he was not "acting under color of state law." The isolated act of Estes "tell-ing"[7] Pickard to pull his car off the road is not sufficient to convert his subsequent actions into "state action." Furthermore, Staley and Williams' arrival on the scene did not convert Estes private action into "state action." Therefore, Plaintiffs have failed to establish an essential element of their 42 U.S.C. § 1983 claim against Estes, and judgment must be entered in favor of the Defendants on Count One.

## II. The Girard Defendants

■ Having concluded that Estes was not acting "under color of state law," the court must next address whether the Girard defendants had a constitutional duty under the substantive due process clause (1) to protect Pickard from the verbal and physical attack by a private citizen[8]; (2) to submit Estes to a field sobriety test, or (3) arrest Estes for assault.

### A. Duty to Protect

■ The purpose of the Due Process Clause is to protect people from the State, not to ensure that the State protects them from each other. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Therefore, "a State's failure to protect an individual against private violence simply does not constitute a violation

6. *Coleman* involved a private creditor's repossession of unsecured collateral. The creditor requested police protection while he repossessed Coleman's truck. Although self-help repossession under U.C.C. § 9–503 does not constitute state action, *Gary v. Darnell*, 505 F.2d 741 (6th Cir.1974), Coleman argued that the police presence during the repossession converted the creditor's actions into "actions under color of state law." *Coleman*, 628 F.2d at 963–964.

7. Transcript of Pre–Disciplinary Hearing: Testimony of Rodney Pickard at p. 5.

8. Plaintiffs assert that a police officer's [a]cts of omission are actionable in this context to the same extent as are acts of commission. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982) (*quoting with approval Smith v. Ross*, 482 F.2d 33 (6th Cir.1973)). A police officer may be held liable for a failure to protect a person *from the excessive force of another officer* if: (1) the officer had observed or had reason to know that excessive force was being used and (2) the officer had both the opportunity and means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425 (6th Cir.1997).

Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by *another officer* is an issue of fact for the jury unless, considering all of the evidence, a reasonable jury could not possibly conclude otherwise. *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir.1994).

However, having concluded in the first part of this opinion that Estes was not acting under color of state law, Plaintiff's "duty to protect against excessive force" argument is inapplicable to the case *sub judice*.

of the Due Process Clause." *Id.* at 197, 109 S.Ct. 998.

However, the *DeShaney* Court recognized certain exceptions to the general rule that the State is not responsible for injury caused by private actors. The State may assume an affirmative duty to prevent harm when the State takes custody of a person and deprives them of their liberty so that they cannot protect themselves, or when the State affirmatively places the person in a position of danger. *Id.* at 201, 109 S.Ct. 998.

■ Plaintiffs in the case *sub judice* do not assert any of the custodial exceptions to the *DeShaney* rule. Therefore, Plaintiffs' claim that Staley should have intervened during the verbal assault rather than the subsequent physical assault, in other words, that Staley failed to protect Pickard from an attack by a private citizen, fails to state a constitutional violation of the substantive due process clause under 42 U.S.C. § 1983.

### B. "Shocks the Conscience"

"Substantive due process claims are of two types. The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment *simpliciter.*'" *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir.1993) *quoting Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (Emphasis in original).

"The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court." *Mertik v. Blalock*, 983 F.2d 1353, 1367–68.

■ With regard to the second type of substantive due process claim, that is, the type of claim asserted in Counts One and Two of the Complaint, the Sixth Circuit has cautioned against applying the "shocks the conscience" standard for cases not involving physical abuse or excessive force. *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991) ("We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity.")

■ Consequently, Plaintiffs' remaining claims that the Girard Defendants did not subject Estes to a field sobriety test, or arrest Estes for assault, simply do not rise to the level of "physical abuse" and, thus, do not state a substantive due process claim.[9]

### State Claims

Finally, as the federal claims in this case have been resolved before trial, this Court declines to exercise supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(c)(3); *See also Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992).

Consequently, Counts One and Two are **DISMISSED with prejudice** and the remaining counts are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

### JUDGMENT

This matter is before the Court upon the Motion for Summary Judgment by Defen-

---

9. Paragraph 11 of the Complaint states:
   Ross and [Girard] knew or had reason to know and anticipate the acts of Estes, Williams, and Staley, on previous acts and omissions of the individual Defendants, but despite this knowledge, Ross and [Girard] negligently, and/or intentionally failed to adequately train, oversee, supervise and discipline the Defendants, thereby causing Plaintiffs harm.
   Plaintiffs have failed to establish a constitutional violation in Counts One and Two. Therefore, the Court shall not address the issues of supervisory or municipal liability.

dants, City of Girard ("Girard"), Frank Staley ("Staley"), Michael Williams ("Williams"), and Anthony Ross ("Ross") ("the Girard Defendants") (Dkt.# 21). For the reasons set forth in the attached Memorandum Opinion and Order which is incorporated herein by reference, Defendants' Motion for Summary Judgment is **GRANTED**.

Consequently, Counts One[1] and Two are **DISMISSED with prejudice** and the remaining counts are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

---

**1.** Defendant Mark Estes did not file a motion for summary judgment. Therefore, Count One is dismissed *sua sponte* against Estes.