**Tracy HODOH–DRUMMOND, Plaintiff,**

**v.**

**SUMMIT COUNTY, et al., Defendants.**

**No. 5:99–CV–1916.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 4, 2000.

renders Defendant's additional argument that Plaintiff is not entitled to front pay and reinstatement moot.

Orlando J. Williams, Ivey & Williams, Akron, OH, for Tracy Hodoh Drummond, plaintiff.

Allyson Miller Leonard, William T. Pivik, Office of the Prosecuting Attorney, Akron, OH, for Summit County, defendant.

Allyson Miller Leonard, William T. Pivik, Jack Morrison, Jr., Thomas R. Houlihan, Amer, Cunningham, Brennan, Akron, OH, for John Croghan, defendant.

## OPINION AND ORDER

GWIN, District Judge.

On December 7, 1999, Defendants Summit County, Summit County Council, Summit County Department of Environmental Services (collectively, the "County Defendants"), Sheila Spencer, and Melanie Wiles filed a motion for summary judgment in this discrimination case arising under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio Rev.Code § 4112. [Doc. 30]. With this motion, defendants contend that Plaintiff Tracy Hodoh–Drummond cannot support her allegations of sexual and racial harassment and retaliation.

Upon a review of the motion and relevant portions of the record, the Court grants the motion in part and denies it in part. The Court grants the motion against all defendants regarding the § 1983 claim and the sexual harassment claims arising under Title VII and Ohio state law. The Court grants the motion as against Defendants Wiles, Spencer, and Croghan in their individual capacities as to all remaining federal claims.[1] In addition, the Court grants the defendants' motion with regard to punitive damages. The Court declines to grant injunctive relief at this time.

However, the Court denies the motion as against Defendants Wiles, Spencer, and Croghan in their individual capacities under state law for race discrimination and retaliation. The Court also denies the motion with regard to Defendant Wiles, sued in her official capacity, on the claims for race discrimination and retaliation arising under Title VII. Finally, the Court denies the motion as against the County Defendants on the state and federal claims for race discrimination and retaliation.

## I. LEGAL STANDARD

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp.*, 822 F.2d at 1435.

Essentially factual disputes about matters essential to adjudication preclude the Court from granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved

---

1. Defendant John Croghan has not filed for summary judgment. Therefore, the Court sua sponte dismisses the § 1983 claim, sexual harassment claims, and remaining federal claims against him. *See Pickard v. City of*

*Girard*, 70 F.Supp.2d 802, 809 (N.D.Ohio 1999) (dismissing claims sua sponte when one affected party failed to file for summary judgment).

conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505).

The Court now reviews each of the plaintiff's claims in turn.

## II. ANALYSIS

### A. Section 1983

The jurisdictional statement of the Amended Complaint indicates that this action arises under, *inter alia,* 42 U.S.C. § 1983. That jurisdictional statement says the defendants deprived plaintiff of Constitutional rights under color of state law. However, the complaint makes no specific § 1983 claim. Nor does Plaintiff Hodoh–Drummond identify what Constitutional rights were deprived. For this reason alone, the Court finds that plaintiff's § 1983 claim must fail.

The plaintiff also fails to identify any practice, policy, or custom of the County that caused a constitutional injury. *See, e.g., Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Be-

cause Plaintiff Hodoh–Drummond fails to produce evidence showing a constitutional injury and fails to produce evidence showing the County Defendants had a policy or practice that caused a constitutional violation, no genuine issue survives for trial regarding the § 1983 claim.

### B. Individual Liability

Plaintiff Hodoh–Drummond sues Defendants John Croghan, Sheila Spencer, and Melanie Wiles individually for violations of state and federal anti-discrimination law.[2]

■ It is well-established that no Title VII claim can be made against employees in their individual capacities. *See Wathen v. General Electric Co.,* 115 F.3d 400, 405 (6th Cir.1997). Therefore, the Title VII claims against Croghan, Spencer, and Wiles in their individual capacities fail.

■■ When interpreting the Ohio anti-discrimination laws, Ohio generally uses the same standards used to interpret Title VII. *See Little Forest Medical Ctr. of Akron v. Ohio Civ. Rts. Comm'n,* 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991). But though no claim can be made under Title VII against employees in their individual capacities, *see Wathen, supra,* Ohio allows suits against employees who are supervisors. *See Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). More recently, the Ohio Supreme Court determined that individual employees are generally liable for violations of § 4112. *See Cheek v. Industrial Powder Coatings, Inc.,* 84 Ohio St.3d 534, 706 N.E.2d 323 (1999).

Therefore, plaintiff's state law claims for discrimination and retaliation remain against Defendants Wiles, Spencer, and Croghan in their individual capacities. She also makes claims against Defendant Wiles under federal law, and the County Defendants under state and federal law. The Court now addresses plaintiff's remaining claims.

### C. Sex Discrimination

Plaintiff Hodoh–Drummond claims the County Defendants and Defendant Wiles

---

**2.** The plaintiff also sues Melanie Wiles in her official capacity.

discriminated against her based on sex in violation of Title VII and Ohio Rev.Code § 4112. Plaintiff says the defendants maintained or tolerated a hostile work environment that injured her.

The Plaintiff, Tracy Hodoh–Drummond, is an African American female. She works as a Utility Billing Clerk in the Summit County Department of Environmental Services. She has held this position for approximately eight years.

The County Defendants are political subdivisions of the state of Ohio. *See* Ohio Rev.Code § 2744.01(F).

On July 27, 1998, Plaintiff Hodoh–Drummond filed a charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC").[3] While the plaintiff apparently does not ground this action upon the allegations contained in this July 27, 1998, charge to the Ohio Civil Rights Commission and the EEOC, she says the defendants retaliated against her because of it.[4]

On Thursday, September 17, 1998, Purchasing Agent John Croghan unzipped Plaintiff Hodoh–Drummond's blouse, exposing her breasts. Croghan's supervisor, Keith Kinzel, witnessed the incident. She says Croghan and Kinzel laughed at Plaintiff and walked away.

A few days after this incident, the plaintiff reported the incident to various supervisors.[5] Shortly after, the County Executive's General Counsel's office received notice of Plaintiff Hodoh–Drummond's objection. The defendants immediately placed Croghan on unpaid administrative leave pending an investigation. On September 24, 1998, the General Counsel's office investigated the report. On September 29, 1998, the defendants held a pre-disciplinary hearing. On October 9, 1998, the County Executive officially placed Croghan on unpaid leave for thirty working days.

Plaintiff first argues that Purchasing Agent John Croghan's acts in the presence of his supervisor, Keith Kinzel, support her claim of harassment, under either a supervisor liability theory or a co-worker liability theory.

■■■ Employer liability for a supervisor's sexual harassment attaches when the hostile work environment has been created *"by a supervisor with immediate (or successively higher) authority over the employee."* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998) (emphasis added).[6] In this case, Keith Kinzel is nowhere in the chain of Plaintiff Hodoh–Drummond's supervisors. The fact that Kinzel is John Croghan's supervisor and laughed when Croghan engaged in the offensive conduct does not trigger supervisor liability. Plaintiff Hodoh–Drummond fails to show evidence sufficient to support her claim under a supervisor hostile environment

**3.** In this charge, the plaintiff alleged the County discriminated against her when it failed to examine her job duties or consider a pay increase for taking on increased responsibilities.

**4.** Plaintiff's retaliation claim is discussed *infra* in Part II.E.

**5.** Among others, the plaintiff reported the incident to Defendant Supervisor Wiles and to an attorney in the office, Jacqueline Thomason.

**6.** Contrary to the plaintiff's position, *Ellerth* does not stand for the proposition that once harassment by a supervisor is established, liability is automatic. Rather, liability turns upon the action taken against the victim. If the harassment is accompanied by a tangible employment action (such as firing or demotion), liability attaches automatically and no defense is available to the defendant employer. *See Burlington v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). If the harassment is not accompanied by tangible employment action, however, the employer may escape liability by showing that it exercised reasonable care to prevent and promptly correct harassing conduct and that the plaintiff unreasonably failed to take advantage of available corrective measures. *Id.*

theory. The Court therefore considers Hodoh–Drummond's claim under a co-worker hostile work environment theory. *See Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 50 (6th Cir.1996) (rejecting a claim for supervisor harassment where the person harassing "was not plaintiff's supervisor, but a supervisor elsewhere in the company").

■ To establish a prima facie case of co-worker sexual harassment under Title VII and Ohio law, the plaintiff must demonstrate that: "(1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action." *Fenton v. HiSAN,* 174 F.3d 827, 829 (6th Cir.1999).

The defendants challenge only the fourth and fifth elements of plaintiff's claim. Upon review of the motion and relevant record evidence, the Court finds that Plaintiff Hodoh–Drummond's claim for co-worker sexual harassment must fail.

First, assuming that the incident with John Croghan was severe enough to create a hostile environment, the plaintiff fails to show that the County Defendants and Defendant Wiles failed to take prompt and appropriate corrective action.

■ A plaintiff may hold an employer directly liable for harassing acts of co-workers if she can show the employer knew or should have known of the conduct and that it failed to implement prompt and appropriate corrective action. *Fleenor,* 81 F.3d at 48. The appropriateness of the corrective action is determined by whether the action taken "manifest[s] indifference or unreasonableness in light of the facts the employer knew or should have known." *Blankenship v. Parke Care Centers,* 123 F.3d 868, 873 (6th Cir.1997).

Plaintiff Hodoh–Drummond contends that the defendants cannot claim they took prompt and appropriate corrective action because they had earlier notice of John Croghan's status as a sexual harasser and did nothing to curb his conduct. Plaintiff says this neglect left her vulnerable to the harassment alleged here.

■ The record in this case does not support defendants' liability for sexual harassment. There is a dearth of information regarding management's knowledge of prior incidents involving John Croghan. Plaintiff Drummond states that she and several others in the Department were aware that Croghan had sexually harassed a temporary worker, Sherry Martin. Although somewhat unclear, it appears that temporary worker Martin worked in the Department for a few days between two and four years prior to the plaintiff's incident with Croghan.[7]

Two of Plaintiff Hodoh–Drummond's co-workers, Latifah Lee and Philomena Pawlus, stated that Ms. Martin complained to them about Croghan's behavior. Lee said Ms. Martin had also complained to "others" and that Martin expressed her intention to inform Finance Director Marilyn Moses about the conduct. Such testimony is obvious hearsay. There is no competent evidence that Martin ever reported the conduct to Moses. Pawlus stated that she and "practically everyone in the Finance Department" was aware that Croghan was harassing Martin. Pawlus believed Croghan's supervisor, Keith Kinzel, knew or should have known of the situation because Martin reported the conduct to Pawlus and "numerous others."

To show liability, "the plaintiff must establish that the employer 'knew or should have known' of the offenses." *Jackson v.*

---

7. The record, although not exact regarding dates, indicates that Ms. Martin worked in the department for anywhere from two or three days to two or three weeks. John Croghan allegedly touched Ms. Martin on a few occasions, and after an incident in which he rubbed her shoulders, Ms. Martin did not return to work at the Department.

*Quanex Corp.,* 191 F.3d 647, 663 (6th Cir. 1999). In *Jackson,* the Sixth Circuit reversed a grant of summary judgment because, though the plaintiff had not reported every objectionable incident to the employer, other employees had reported the conduct to management.

In this case, neither Lee's nor Pawlus' testimony establishes that management had any knowledge about the incident involving Ms. Martin. Neither Lee nor Pawlus identified anyone in management who may have witnessed the alleged conduct or anyone who may have reported it to management. Their suggestion that management should have known simply because Martin informed others in the workplace is causally attenuated. These statements, being both vague and conclusory, are insufficient to sustain plaintiff's burden on summary judgment.

Another co-worker, Kathy Letzler, testified to an incident involving Croghan that occurred two or three years before the conduct at issue here. Letzler says she overheard Marilyn Moses, a member of management, tell Croghan to "keep his hands to himself." This comment could be taken as evidence that management knew Croghan engaged in objectionable conduct. It could also show that the County Defendants reprimanded Croghan; if so, such evidence would help the defendants prove they responded to employee complaints, not that they ignored them.

Even assuming the statement shows the employer had some form of notice and failed to respond, the circumstances do not establish severe or pervasive harassment. Viewing the evidence in Hodoh–Drummond's favor, at most there were two incidents occurring several years before the incident giving rise to plaintiff's claim. There is no evidence that Croghan engaged in similar conduct between that time and the incident with the plaintiff two or three years later.

The earlier incidents are relevant to this Court's decision. Indeed, a court "must judge the appropriateness of a response by the frequency and severity of the alleged harassment." *Id.* But absent more evidence that management knew of an ongoing problem with Croghan it would be inappropriate to reach back to, in effect, create a pattern where one would not exist otherwise.

■ In this case, the plaintiff informed her supervisor, Defendant Melanie Wiles, about the incident with Croghan on Monday, September 21, 1998. In appropriate order, the defendants brought the complaint to the attention of the County Executive's General Counsel's office on September 23, 1998. The defendants immediately placed Croghan on unpaid administrative leave pending an investigation. On Thursday, September 24, the General Counsel's office investigated the report. The following Tuesday, the defendants held a predisciplinary hearing and determined that discipline was warranted. On October 9, 1998, the County Executive disciplined Croghan by putting him on unpaid leave for thirty working days.

Based on the undisputed evidence, there is no genuine issue whether the County Defendants took prompt action to remedy the situation. The Court also finds no evidence of manifest indifference or unreasonableness by the defendants. Indeed, the County placed Croghan on unpaid leave shortly after learning of the incident. After a thorough investigation and hearing, the defendants extended this unpaid leave to thirty days.

■ Further, a response is adequate if it is "reasonably calculated" to end the harassment. *See id.* (citing *Intlekofer v. Turnage,* 973 F.2d 773, 778 (9th Cir.1992)). The plaintiff admits Croghan has not engaged in any similar conduct since being disciplined.

For these reasons, the defendants cannot be held liable for their response to the incident involving John Croghan.[8]

---

**8.** Plaintiff Hodoh–Drummond argues that Ohio law demands that the Court deny summary judgment. In *Kerans v. Porter Paint Co.,*

As explained, Plaintiff Hodoh–Drummond's primary argument revolves around the incident with Croghan. However, Plaintiff Drummond also claims she complained about other sex-based conduct by co-workers, but that the defendants failed to respond to her complaints. The County may be liable for failing to respond only if the conduct was severe or pervasive enough to alter the conditions of plaintiff's employment. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998). On this point, Plaintiff's evidence fails to raise a genuine issue for trial.

In Plaintiff Hodoh–Drummond's discussion of sexual harassment, she does not address certain potentially gender-related statements made by Sheila Spencer, despite having stated in her complaint and affidavit that such statements were made.[9] Plaintiff claims in her affidavit that Spencer has called her a "cunt," a "black bitch" and a "dumb bitch."

Plaintiff states she complained about the slurs on "numerous occasions" over the years. But she does not specify how frequently these slurs occurred or over what time period the statements were made. Although she maintains that Defendant Spencer has verbally harassed her "nonstop for approximately eight (8) years," Hodoh–Drummond mentions only two dates in her affidavit. She says that approximately two months before filing the instant suit Spencer called her a racially derogatory name, a comment not necessarily related to sex discrimination. She also says that a few weeks before filing her affidavit Spencer called her a "dumb bitch, etc.".

Plaintiff's supporting evidence is even less illuminating. Latifah Lee reported hearing Sheila Spencer call the plaintiff a "black bitch" and a "cunt." However, Lee noted that Spencer used these terms when the offices were situated in another building. From the record, it appears that the Department moved offices several years ago.

Kathleen Letzler stated that she heard Spencer use similar language to that reported by Latifah Lee. Letzler stated that on one occasion, Spencer called the plaintiff a "cunt" in the presence of Defendant Wiles, supervisor to both Defendant Spencer and the plaintiff. However, when asked to quantify how frequently Spencer engaged in this speech, Letzler offered only that she had done so "for a while" before Hodoh–Drummond filed her lawsuit.

The Court finds that the evidence proffered by the plaintiff is too vague to support a claim that the alleged comments were severe or pervasive enough to create a hostile work environment. Although general allegations may suffice to survive a motion to dismiss, it is the plaintiff's burden on summary judgment to come forth with sufficiently particularized evidence to support her claims.

The Court notes that the Sixth Circuit has directed district courts to examine the totality of the circumstances in determining whether conduct is severe or pervasive. *See Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir.1999). This Court has discussed the incident with John Croghan

61 Ohio St.3d 486, 575 N.E.2d 428 (1991), the Ohio Supreme Court determined that "where there is evidence in the record suggesting that the [accused] employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer." *Kerans*, 61 Ohio St.3d at Syl. ¶ 2, 575 N.E.2d 428. Unlike in *Kerans*, in this case there is no evidence that any employees lodged similar complaints against John Croghan. Further, the testimony supporting plaintiff's claim that

the employer should have known about his proclivities was conclusory—e.g., Ms. Pawlus's statement that "practically everyone" in the Finance Department knew Croghan had harassed temporary employee Sherry Martin and Ms. Lee's testimony that Martin expressed her intent to report his conduct to management. Therefore, the plaintiff's argument is unpersuasive.

9. The plaintiff does mention some of these comments in her discussion of racial harassment.

separately from Spencer's alleged comments. The duty to view the evidence in a light most favorable to the plaintiff led the Court to make two different, and somewhat mutually exclusive, assumptions in the plaintiff's favor.

The only verifiable complaint made to management in this case was based on the incident with Croghan. The plaintiff gives almost no evidence explaining the context of Sheila Spencer's comments. The Court assumes, in plaintiff's favor, that the comments were made and that Plaintiff Drummond was offended by them.[10] But Plaintiff Hodoh–Drummond gives insufficient evidence that management was aware of such comments or that the comments were so frequent that management should have been aware. The Court finds Plaintiff Hodoh–Drummond fails to show sufficient evidence to support a claim of hostile environment.

The Sixth Circuit demands consideration of the totality of the circumstances, but it does not release the plaintiff from her burden to proffer sufficiently specific information to survive a summary judgment motion.

For these reasons, the Court finds that Plaintiff Hodoh–Drummond has failed to support her sexual harassment claim under both federal and state law. The Court therefore grants the defendants' motion on these claims.

10. Indeed, the defendants concede, for the purposes of their motion, that Plaintiff Hodoh–Drummond has met the first three elements of her sexual harassment claim.

11. There is a question regarding the fate of certain personnel files that document the reports plaintiff has made to management. Plaintiff Hodoh–Drummond asserts that some reports were destroyed and others were removed by Marilyn Moses.

12. The plaintiff states in her affidavit that she complained to management about Spencer's behavior regarding both race- and gender-related comments. As explained earlier in this opinion, plaintiff's allegations of gender-related comments were insufficient to support her claim even assuming she reported such comments. Her sexual harassment claim failed because the proffered evidence was

## D. Race Discrimination

 The defendants contend there is insufficient evidence to support the plaintiff's claim of race discrimination. To determine whether a plaintiff has established a hostile work environment, the Court must look at all of the circumstances. The Court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with the employee's performance. *See Jackson*, 191 F.3d at 658 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Once the plaintiff shows that a hostile work environment exists, she must show that the employer tolerated or condoned the situation or that it knew or should have known of the alleged conduct and failed to take prompt remedial action. *See id.* at 659 (citing *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir.1988)).

 In this case, Plaintiff Hodoh–Drummond has alleged that she complained to management about Sheila Spencer's offensive behavior on numerous occasions,[11] but the defendants took no action.[12] Plaintiff's co-worker Latifah Lee stated she witnessed the plaintiff reporting an incident that occurred after this action was filed to Defendant Wiles.[13] Defendant

vague and conclusory as to dates and frequency.

The Court notes that plaintiff's original complaint to the Ohio Civil Rights Commission and EEOC included only claims of race discrimination and apparently did not include any reference to Sheila Spencer's comments. After the incident with John Croghan, plaintiff apparently filed another complaint with the Ohio Civil Rights Commission regarding sexual harassment. If Sheila Spencer's comments—regarding race or sex—were so pervasive and offensive, it is unclear why the plaintiff did not include them in her original complaint rather than wait until the incident with Croghan to raise the issue.

13. Plaintiff's co-worker Kathy Letzler also heard Sheila Spencer use a racial slur around the same time. It appears that Letzler was

Wiles told the plaintiff there was nothing she could do to address the problem.[14]

Plaintiff's co-worker Kathy Letzler heard John Croghan use a racial slur after the plaintiff reported the sexual harassment incident and before she filed this action. However, Letzler did not report the incident, nor is there any evidence that anyone from management heard the comment. Letzler also said she has reported some of Spencer's comments to Finance Director Marilyn Moses in the past, but is not specific regarding when the incidents occurred or when she informed Moses.

Plaintiff Hodoh–Drummond also alleges that after she complained about the incident involving Croghan, Defendant Wiles prohibited employees from speaking to the plaintiff while allowing Sheila Spencer, a white woman, unlimited guests in her work area. Plaintiff's co-worker Kathy Letzler confirmed this situation.

Plaintiff Hodoh–Drummond says as a result of the discriminatory environment, her work environment was so altered that she became ill and has missed over 300 hours of work. On one occasion, she suffered breathing difficulties serious enough to merit emergency help. The plaintiff says that as the paramedics took her out on a stretcher, a white co-worker said, "I hope she dies."

Considering the facts in their entirety, a reasonable jury could find there was a racially hostile environment at defendants' offices. Therefore, the Court denies defendants' motion on Plaintiff Hodoh–Drummond's race discrimination claims arising under Title VII and Ohio Rev.Code § 4112.

### E. Retaliation

 Plaintiff Hodoh–Drummond alleges that the defendants have retaliated against her since she complained about race and sex discrimination. The defendants argue that she did not suffer an adverse employment action. Although plaintiff alleges that Defendant Wiles removed certain work from her, the plaintiff's primary allegation is that she has

referring to the same comment about which Drummond and Lee complained to Defendant Wiles. *See* Letzler Dep. at 80–81.

Latifah Lee also testified to hearing Sheila Spencer make other race-based comments in Defendant Wiles' presence in the past. However, these statements were apparently made several years ago:

Q: Have you ever heard Ms. Spencer engage in any unprofessional conduct in the workplace?
A: Every day.
Q: What do you mean by that?
A: She's always cussing.... She's called Ms. Drummond out of her name. She's just very unprofessional when it comes to working.
Q: When you say "she's called Ms. Drummond out of her name," can you give some examples that you have heard?
A: She's called Ms. Drummond a "black bitch." She's called her a "nigger." She's called her a "cunt." Those names particularly are the ones I've heard her say.
\*\*\*\*
Q: Melanie Wiles, your supervisor, has she witnessed Sheila use these names—
A: Yes.
\*\*\*\*
Q: This name-calling, especially these racial epithets ... were these done since you

have been out in your new location in the Falls or was this a long time ago?
A: No, this happened when Ms. Drummond first started to work.
Q: Okay.
A: Down at the old building, ....
Q: Has it continued or has it stopped?
\*\*\*\*
A: Not that I have heard personally, but I'm sure it has continued because of the— you can tell there's just the hatred that Ms. Spencer has for Ms. Drummond.
Lee Deposition at 7–9.

**14.** In her deposition, Ms. Lee testified to the following:

Q: Are you aware of Ms. Drummond making a complaint to her supervisor, Melanie Wiles, about Sheila harassing her?
A: Yes.
Q: And were you there when that was done?
A: Yes.
Q: How did Ms. Wiles respond to that?
A: She responded by there was nothing she could do for the fact that Tracy was suing. There was nothing they could do to discipline Sheila, to put a stop to her, because Ms. Drummond was suing the county.
Lee Deposition at 10.

been harassed as a result of reporting earlier acts of discrimination.

Very recently, the Sixth Circuit determined that adverse employment action is not the only retaliation cognizable under Title VII. Retaliatory harassment by a supervisor is actionable under Title VII under a "hostile environment" theory. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 791 (6th Cir.2000). Therefore, to make a prima facie case of retaliation, "a plaintiff must now prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor;* and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Id.* (emphasis added).

On July 27, 1998, Plaintiff Hodoh–Drummond filed a claim with the Ohio Civil Rights Commission and the EEOC alleging race discrimination. The plaintiff says that subsequent to filing this complaint with the Ohio Civil Rights Commission, Defendant Melanie Wiles began stripping plaintiff of job responsibilities at work, depriving her of overtime wages. The plaintiff says Defendant Wiles told the plaintiff that if she complained to management about this practice, Wiles would make her life "a living hell." Kathy Letzler confirmed Defendant Wiles' threat.

Suggesting further support for her claim that defendants discriminated, Hodoh–Drummond claims that since reporting the incident with Croghan, Defendant Sheila Spencer has become more brazen with her verbal harassment and has openly used racial slurs and sexually derogatory language without consequences. In addition, the plaintiff says that Defendant Wiles has prohibited her from talking with other employees while Defendant Spencer, a white

employee, is allowed visitors for extended periods of time.

Hodoh–Drummond complains that her car was vandalized.[15] Three other black employees who supported her after she complained of sexual harassment also had their cars vandalized. Although the perpetrator was never found, Hodoh–Drummond say this vandalism supports her claim that defendants discriminated and retaliated against her.

Plaintiff Hodoh–Drummond says as a result of the retaliation, she has become isolated at work. Plaintiff says the stress level became so unbearable that she became sick. On one occasion, the plaintiff had to be rushed to the hospital for breathing difficulties.

In light of all the circumstances, the Court finds there is a genuine issue regarding retaliation and denies the defendants' motion on this claim.

### F. Punitive Damages

Plaintiff Hodoh–Drummond seeks punitive damages for all claims surviving summary judgment. Punitive damages are not recoverable under Title VII. *See* 42 U.S.C. § 1981a(b)(1) (precluding punitive damages against a "government, government agency or political subdivision" under Title VII). Summit County is a political subdivision. *See* Ohio Rev.Code § 2744.01(F). County employees share this immunity. *See Kelm v. Arlington Heights Park District,* 1999 WL 753930, *9 (N.D.Ill. Sept.15, 1999) (finding punitives unavailable under Title VII as against political subdivision or its employees). Therefore, all claims for punitive damages must fail.

### G. Injunctive Relief

The County Defendants contend that injunctive relief is not warranted in this case. Plaintiff Hodoh–Drummond has not responded to the defendants' challenge.

---

**15.** Plaintiff Hodoh–Drummond's car was "keyed," nails were found in her tires, and the side of her car was kicked in.

The Court recognizes that the facts adduced at trial may provide grounds for injunctive relief. However, the Court finds injunctive relief inappropriate at this time.

### III. CONCLUSION

For the reasons explained herein, the Court grants the motion against all defendants regarding the § 1983 claim and the sexual harassment claims arising under Title VII and Ohio Rev.Code § 4112. The Court grants the motion as against Defendants Croghan, Spencer, and Wiles in their individual capacities as to remaining federal claims. The Court also grants the defendants' motion with regard to punitive damages and declines to grant injunctive relief at this time.

The Court denies the motion as against Defendants Croghan, Spencer, and Wiles for state claims brought against them individually. The Court also denies the motion as against the County Defendants and Defendant Wiles, sued in her official capacity, on the claims for race discrimination and retaliation arising under Title VII and Ohio Rev.Code § 4112.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion in the above-captioned case. For the reasons stated therein, the Court grants the motion against all defendants regarding the § 1983 claim and the sexual harassment claims arising under Title VII and Ohio Rev.Code § 4112. The Court grants the motion as against Defendants Croghan, Spencer, and Wiles in their individual capacities as to remaining federal claims. The Court also grants the defendants' motion with regard to punitive damages and declines to grant injunctive relief at this time.

The Court denies the motion as against Defendants Croghan, Spencer, and Wiles for state claims brought against them individually. The Court also denies the motion as against the County Defendants and Defendant Wiles, sued in her official ca-

pacity, on the claims for race discrimination and retaliation arising under Title VII and Ohio Rev.Code § 4112.

IT IS SO ORDERED.