OPINION
{¶ 1} Appellant, Rebecca Arp, appeals from a final judgment of the Geauga County Court of Common Pleas granting appellee, Geauga County Board of Mental Retardation and Developmental Disabilities ("the Board"), summary judgment. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} On or about October 21, 1999, appellant, Rebecca Arp, entered the Geauga County Board of Mental Retardation and Developmental Disabilities' Human Resources office to submit a complaint she had with her supervisor, Richard Klepper. On the previous day, appellant approached Klepper with a request for sick leave in order to treat poison ivy. In response to appellant's request, Klepper queried whether, in spite of her condition, appellant could still "make out" with her husband. Upset by this remark, appellant went home and investigated the procedure for leveling a complaint for sexual harassment. Appellant's New Employee Handbook directed her to contact the superintendent or the human resources department.
 {¶ 3} The next day, appellant contacted Human Resources office and was connected to the director supervisor of Human Resources, Assistant Superintendent Carol Brill. During her meeting with Brill, appellant detailed her most recent episode with Klepper. Appellant also communicated how Klepper had continuously harassed her with sexually oriented comments and gestures from 1998 through the time of her complaint, October of 1999.[1] In short, appellant told Brill that her work environment had become intolerable and she wanted Klepper's harassment to stop.
 {¶ 4} After appellant conveyed her concerns, Brill offered her several options: (1) Filing a formal complaint which would include an investigation by the appropriate authorities; (2) ignore the situation and pretend that it never happened; or (3) the matter could be addressed internally in an effort to arrest the problem without outside publicity. The meeting concluded with an understanding that appellant would consider her options overnight and return the following day for further discussion.
 {¶ 5} On the following day, appellant told Brill that she did not want to make her situation a public issue. In lieu of a formal complaint, appellant asked Brill to speak directly to Klepper to ensure that the behavior would stop. On October 25, 1999, Brill called Klepper into her office to discuss workplace harassment. Brill spoke directly regarding the details of appellant's complaint. Although Klepper denied the allegations, Brill informed him that his perceptions regarding his actions were not important so long as others perceived his actions to be inappropriate. Brill asked Klepper if it was worth his career, reputation, and position in the community to ignore the present warning. At the conclusion of the meeting, Klepper agreed to avoid appellant with the exception of work related necessities. Soon after the meeting, Brill informed appellant that she had spoke with Klepper and said she had been very specific regarding the appellant's allegations. Brill told appellant to inform her if she had any additional problems with Klepper.
 {¶ 6} Following Brill's conversation with Klepper, appellant's work environment improved. Between October, 1999 and May, 2000, Brill contacted appellant approximately three times inquiring into her work environment. Each time, appellant indicated that her working conditions were improved and there had been no further episodes of harassment.
 {¶ 7} On May 25, 2000, Klepper approached a group of employees of which appellant was a part and began discussing a recent conference he attended. According to appellant, Klepper was bemoaning the conference because people were continuously getting out of their seats and leaving. However, Klepper then looked at appellant and declared that he could tell who was "feeling ill and he could tell whose time of the month it was."
 {¶ 8} Appellant stated that this comment made her physically ill so she retreated to the bathroom where she vomited. Appellant then went directly to Brill's office and announced she was "fed up" and "couldn't take it anymore." Brill called Superintendent Dan Larrick who listened to appellant's account of the details. All parties agreed that filing a formal complaint was appropriate. Larrick then provided appellant with a grievance form and asked her to return it as soon as possible along with any documentation of her harassment.
 {¶ 9} Brill contacted the county prosecutor's office regarding the procedure for moving forward with the complaint. The prosecutor directed Brill to immediately conduct an investigation. Based on a concern that the Board's administrative staff would not be able to conduct an impartial investigation, Brill contacted the offices of Geauga County to identify someone outside the agency to conduct a complete investigation. Assistant County Administrator John Zacharia was designated the principal investigator.
 {¶ 10} Over the next month, Zacharia interviewed appellant, Klepper, other women identified by appellant as having similar experiences with Klepper, and other individuals with relevant information. After the interviews, Zachariah issued a final report to the Board which stated his view that Klepper had engaged in conduct that amounted to sexual harassment and that the Board did not have a clearly articulated anti-sexual harassment policy.
 {¶ 11} On August 7, 2000, Klepper was advised that the Board would hold a pre-disciplinary conference regarding the complaint allegations. On August 16, 2000, a pre-disciplinary conference was held. On August 29, 2000, the Board notified Klepper that his employment would be terminated on the following day. Klepper requested a formal hearing and ultimately, in settlement of the parties' differences, Klepper was allowed to retire.
 {¶ 12} On February 16, 2001, appellant filed her complaint against Klepper, the Board, and the Geauga County Commissioners alleging sexual harassment, hostile work environment, and retaliation and negligent retention of a supervisor. On December 28, 2001, the Board filed its motion for summary judgment and on December 31, 2001, Klepper filed his motion for summary judgment. Both motions were opposed by appellant. On April 26, 2002, appellant voluntarily dismissed her claims against the Geauga County Commissioners and the dismissal was entered on May 2, 2002. On August 27, 2002, the trial court denied Klepper's motion for summary judgment and granted the Board's motion for summary judgment.
 {¶ 13} From this decision, appellant filed a timely notice of appeal with this court. She now asserts the following assignments of error:
 {¶ 14} "[1.] The trial court erred to the prejudice of appellant by granting the board's motion for summary judgment on the ground that appellant did not suffer any tangible employment action as a result of Klepper's harassment.
 {¶ 15} "[2.] The trial court erred to the prejudice of appellant by granting the Board's motion for summary judgment on the ground that the board had established the Farragher/Ellerth affirmative defense.
 {¶ 16} "[3.] The trial court erred to the prejudice of appellant by granting the Board's motion for summary judgment without addressing the merits of appellant's fourth cause of action-negligent retention of a supervisor."
 {¶ 17} At the outset, it is useful to delineate the nature of the legal issue under consideration: Appellant seeks recovery against her employer based upon her claim of sexual harassment by her supervisor, Richard Klepper. In Faragher v. City of Boca Raton (1998), 524 U.S. 775, the United States Supreme Court established a standard of liability in response to allegations of sexual harassment involving a supervisory employee. The Court indicated:
 {¶ 18} "An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages ***."Id. at 807.
 {¶ 19} In the absence of a tangible employment action, the affirmative defense available to employers for acts of sexual harassment committed by a supervisor comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Id.
807. In sum, if the harassment is accompanied by a tangible employment action, liability attaches automatically and no defense is available to the defendant employer. However, if the harassment is not accompanied by a tangible employment action, the employer may escape liability by proving the aforementioned affirmative defense.
 {¶ 20} In her first assignment of error, appellant claims the lower court erred in granting the Board's motion for summary judgment because she suffered a tangible employment action as a consequence of Klepper's failure to conduct a performance evaluation. Specifically, appellant argues Klepper's failure to evaluate her job performance in accordance with the terms and conditions of her employment contract effected a tangible employment action. We agree.
 {¶ 21} In reviewing an award of summary judgment, we apply a de novo standard of review. Village of Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. As such, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the nonmoving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, who is entitled to have the evidence construed most strongly in her favor. Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370.
 {¶ 22} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Hunter v. Interpak, Inc., 11th Dist. No. 2001-L-198, 2002 Ohio 7149, at ¶ 9, citing, Dresher v. Burt (1993),75 Ohio St.3d 280, 293. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id.
 {¶ 23} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 24} "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Industries v.Ellerth (1998), 524 U.S. 742, 761.
 {¶ 25} "Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control. Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." Id. at 762.
 {¶ 26} Insofar as performance evaluations were required by appellant's collective bargaining agreement, she maintains Klepper's failure to conduct the evaluations was a tangible employment action.
 {¶ 27} Appellant cites Wilburn v. Fleet Financial Group, Inc.
(D.Conn. 2001), 170 F. Supp.2d 219 in support of her position. InWilburn, the court held that the failure to evaluate does not, in and of itself, constitute a tangible employment action. Rather, where there is no evidence from which a reasonable jury could conclude that Klepper's failure to evaluate appellant's performance was related to the pattern of sexual harassment such that the harassment could reasonably be said to have "culminated" in the refusal to evaluate, there is no tangible employment action. Id. at 228.
 {¶ 28} In the current case, appellant asked Klepper to conduct a performance evaluation so that a record of her performance would be included in her personnel file. To this request, Klepper responded: "You haven't done anything for me to evaluate you on. I haven't seen you on your knees." Moreover, according to Brill's testimony, performance evaluations were a requirement of her employment pursuant to her collective bargaining agreement. Brill further indicated that a positive performance evaluation is a springboard for raises and/or promotions.
 {¶ 29} With respect to the interrelationship of sexual harassment and performance evaluations Brill testified: "My understanding of sexual harassment has to do with if you don't perform in a certain way, your performance evaluation, your opportunity for promotion or raise is infringed ***. If you don't respond to a person's gesture in the way the person would like you to respond, then it would result in a lower performance review or loss of pay or status or promotional opportunities." As indicated above, Klepper never conducted appellant's performance evaluation and, as such, appellant's opportunity for promotion was ostensibly encumbered.
 {¶ 30} In sum, testimony established that Klepper refused to conduct appellant's performance evaluations because he "[had not] seen [appellant] on her knees yet." In light of this testimony, there is a genuine issue of material fact as to whether Klepper's harassment reasonably culminated in a refusal to evaluate. Wilburn, supra, at 228. Moreover, performance evaluations were required by appellant's collective bargaining agreement. As such, Klepper's failure to conduct appellant's evaluation may have infringed upon appellant's opportunity for a promotion. Therefore, when viewed in a light most favorable to appellant, there are genuine issues of material fact as to whether Klepper's failure to conduct a performance evaluation was a tangible employment action. Thus, appellant's first assignment of error has merit.
 {¶ 31} In her second assignment of error appellant argues that even if she suffered no tangible employment action, the Board failed to meet the required elements of the Ellerth/Faragher affirmative defense. In particular, appellant argues that the Board did not have a reasonable policy in place to prevent and correct sexual harassment.
 {¶ 32} In concluding that the Board did not have a reasonable sexual harassment policy in place, appellant relies on the findings of an investigative report conducted by Assistant County Administrator John K. Zachariah. Zachariah's report was initiated on or about June 23, 2000, subsequent to Appellant's final complaint regarding Klepper's behavior. In his report, Zachariah stated that the Board did not have a "clearly articulated anti-sexual harassment policy and procedure." Zachariah further noted that "there has been no staff training in anti-sexual harassment."
 {¶ 33} In response, the Board maintains that it did have a clear "Anti-Harassment Policy" published in its Policy Manual and summarized in its New Employee Handbook. In particular, at the inception of employment, each new employee is given a New Employee Handbook. Although new employees are not provided with a copy of the Board's Policy Manual, they are apparently instructed to familiarize themselves with the policies contained therein. Moreover, the Board points out appellant's admission that she "looked at [the policy] previously, so I basically was aware of what I needed to do." From these facts, the Board asserts that it had a policy in place and it was "reasonable"
 {¶ 34} Under the circumstances, it appears that the Board did have a policy prohibiting sexual harassment. It is also evident that, at the very least, an outline of that policy was disseminated via the New Employee Handbook to each new employee upon commencement of his or her duties. However, it is equally clear that a detailed exposition of this policy did not accompany the circulation of the New Employee Handbook. In fact, Assistant Superintendent Brill indicated that the Board's anti-harassment policy was expressly defined within the Board's policy manual but the Board did not have a practice of providing copies of all Board policies to every employee. Further, Brill testified that the harassment policy did not contain a reference to a complaint form. Instead, it details a procedure whereby an employee with a complaint must report to the human resources manager, the superintendent, or the Board president.
 {¶ 35} As the Board notes, dissemination of "an effective anti-harassment policy provides compelling proof" that the employer has exercised reasonable care to prevent and correct sexual harassment.Lissau v. Southern Food Serv., Inc., (C.A.4, 1998), 159 F.3d 177, 182. The question therefore becomes whether the extant policy discussed above is "effective." Although appellant verbalized her "awareness" of the policy and procedure, a genuine factual issue must be resolved as to whether this awareness can be viewed as adequate evidence of the policy's efficacy. It is our position that appellant's disclosure of her awareness of the policy does not necessarily imply that the policy, as it was written and circulated, was effectively drafted or implemented. This conclusion is bolstered by both Assistant Superintendent Brill's recognition that the Board did not have a clearly articulated anti-sexual harassment policy and procedure in place during October, 1999 or May, 2000. In essence, Brill's conclusion corresponds to the conclusion of the Zachariah report. As such, when the evidence is viewed most strongly in appellant's favor, there is an issue of material fact as to whether the policy was effective.
 {¶ 36} However, the Board suggests that even if its policy does not provide sufficient evidence of its reasonable care, its response to appellant's complaints were adequate because they were "reasonably calculated to end the harassment." Hodoh-Drummond v. Summit Cty.
(N.D.Ohio. 2000), 84 F. Supp.2d 874, 881. To this end, the Board observes that, after appellant made her initial complaint it provided her with two options by which she could pursue the problem, viz, she could file a formal complaint or the Board could address the problem internally. Appellant voluntarily chose to have the matter addressed internally. Once appellant made this decision, Brill called Klepper into her office where she exhorted him to avoid contact with appellant. Brill indicated in her deposition that Klepper acknowledged her admonitions and agreed to avoid appellant. After this meeting, the Board placed Klepper back into his supervisory role in the same building and same office as appellant. The Board further points out that, subsequent to this meeting, appellant's working conditions improved and, for some seven months, she experienced no problems with Klepper. Thus, the Board maintains that it exercised reasonable care to prevent or promptly correct any sexually harassing behavior.
 {¶ 37} Were these the only facts on which this court had to rule, we would agree that the Board did exercise reasonable care in the manner it handled appellant's complaints. However, certain facts revealed in the depositions of appellant and Ms. Brill militate against this conclusion. Specifically, in her deposition, appellant listed six people (i.e., Kathy Abrahamson, Terry Sheridan, Cindy Brown, Carey Kleinschmidt, Keth Werbeach, and Dan Harsyn) within the Boards employ who alerted her to Klepper's reputation for harassing behavior. Further, Brill testified that prior to October, 1999, she had heard, albeit not firsthand, that Klepper had previously engaged in some similar form of unseemly behavior. Brill also indicated that Beth Kimbell, another Board employee, had come to her in either October, 1999, or May, 2000, and disclosed that Klepper had touched her inappropriately (namely, Kimball was forced to touch Klepper's genitals). These facts create a genuine issue of material fact especially when viewed in appellant's favor. The Board's action of placing Klepper back into the same working environment as appellant was arguably not an exercise of reasonable care or an example of an effective policy.
 {¶ 38} Further, although appellant was given two options on how to proceed with her complaint, there is absolutely no evidence as to whether an opportunity to make a lateral transfer into a different office under a different supervisor was either a viable or an available option.
 {¶ 39} Moreover, because other employees (including some ostensible management) were aware of Mr. Klepper's reputation for inappropriate behavior, the nature and extent of their knowledge is material to a determination of whether the Board had either actual or constructive prior knowledge of said reputation. See BreMiller v.Cleveland Psychiatric Inst. (N.D.Ohio. 2000), 195 F.R.D. 1 (stating "[a]n employer may be charged with knowledge when an employee*** complain[s] to management, or when the sexual harassment is pervasive, which gives rise to an inference of knowledge or constructive knowledge." Id. at 28). In the current matter, evidence that six other Board employees were aware of Klepper's reputation for harassment, such may be sufficiently pervasive to create a material issue of fact regarding whether the Board had knowledge or constructive knowledge of Klepper's reputation.
 {¶ 40} Similarly, it is possible that Brill was aware of Klepper's inappropriate behavior before she obtained her position as assistant superintendent. If evidence to this effect were demonstrated, Brill's knowledge of past harassment, combined with her decision to keep appellant under Klepper's supervision could provide a material dispute of fact. That is, under traditional agency principles, Brill's awareness of past harassment could be imputed to the Board insofar as she occupied a managerial position. Thus, placing appellant back into the same office with Mr. Klepper with such knowledge would not likely be an exercise of reasonable care. Moreover, if facts were established that Beth Kimball told Ms. Brill of her episode with Klepper in October of 1999, the Board could be charged with actual notice of Klepper's misbehavior early enough to prevent the May, 2000, episode.
 {¶ 41} We must emphasize our position is not that the Board's actions were categorically unreasonable. However, "[s]ummary judgment is a procedural device to terminate litigation*** it must be awarded cautiously with any doubts resolved in favor of the nonmoving party."Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359. Consequently, we find that there is an issue of material fact as to whether the Board necessarily exercised reasonable care under the circumstances. Therefore, the Board is not entitled to summary judgment. Hence, appellant's second assignment of error has merit.
 {¶ 42} Insofar as the Board has failed to demonstrate that there is no issue of material fact whether it exercised reasonable care to prevent and correct promptly any harassing behavior, it has not met the first prong of the Ellerth/Faragher affirmative defense. The affirmative defense requires proof of two conjunctive elements. Therefore, it is unnecessary to address the second prong.
 {¶ 43} In her third assignment of error, appellant argues that the trial court erred by granting summary judgment without addressing the merits of her claim for negligent retention of a supervisor. In support of her position, appellant directs our attention to a memo sent by Superintendent Larrick to John Zachariah indicating Larrick was aware of Klepper's harassing behavior as early as 1997. The Board asserts that this memo is incompetent insofar as it was not sworn, certified, or authenticated by affidavit. See Civ.R. 56(E).
 {¶ 44} In response to the Board's claim that the memo is incompetent, appellant notes that Civ.R. 56(C) permits the use of depositions to demonstrate the existence of a genuine issue of material fact. Insofar as the Zachariah report, with the Larrick Memo attached, was identified as Plaintiff's Exhibit 4 to the Brill deposition, it may be utilized to oppose the Board's summary judgment. Hence, the Board's argument regarding the incompetence of the Zachariah report and the Larrick Memo is not well taken. Furthermore, because we review the grant of summary judgment de novo, we shall explore whether appellant has any other foundations for her claim of negligent retention.
 {¶ 45} The elements of a claim for relief for negligent hiring or negligent retention are: (1) The existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. Peterson v. Buckeye Steel Casings (1999),133 Ohio App.3d 715, 729; see also, Ruta v. Breckenridge-Remy, Co.,
(1982), 69 Ohio St.2d 66, 69. In our view, appellant has alleged sufficient facts to support each element.
 {¶ 46} In Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486, the Supreme Court of Ohio explained:
 {¶ 47} "An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees***. [W]here an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing." Id. at 493.
 {¶ 48} As we stated above, the deposition testimony of appellant indicates that six other employees were aware of Klepper's reputation for behaving inappropriately. Moreover, Brill admitted that she was aware of Klepper's unsavory conduct prior to October of 1999. There was evidence that six individuals under the Board's employ had some awareness of Klepper's reputation, suggesting that the sexual harassment was pervasive. Thus there was a material issue of fact as to whether there was actual or constructive knowledge on behalf of the Board. Furthermore, Brill's position as assistant superintendent placed her in a position of management. That said, there are several genuine issues of material fact to be resolved with respect to the elements of appellant's claim for negligent retention. Therefore, the trial court did err in awarding summary judgment without addressing the merits of appellant's claim.
 {¶ 49} In sum, because of the presence of material issues of fact with respect to negligent retention summary judgment was inappropriate. Therefore, we must sustain appellant's third assignment of error.
 {¶ 50} Thus, because appellant's first, second, and third assignments of error have merit, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Juvenile Division is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.
JUDITH A. CHRISTLEY, J., concurs.
DIANE V. GRENDELL, J., dissents.
[1] Appellant stated that, inter alia, Klepper had (1) a penchant for staring at her for prolonged periods; (2) attempted to touch her; (3) expressed his desire to see her with her shirt off; and (4) attempted to invite himself to appellant's home while her husband was away.