Casey D. STENGEL et al.,
Plaintiffs-Appellees,

v.

Raymond L. BELCHER, Individually
and as a Police Officer of the Police
Department of the City of Columbus,
Defendant-Appellant.

No. 75–1075.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1975.

Decided Sept. 16, 1975.

Dale A. Crawford, Robert Bell, James J. Hughes, Jr., Columbus, Ohio, for defendant-appellant.

Charles E. Taylor, Clayman, Jaffy & Taylor, John H. Lewis, Columbus, Ohio, for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

WEICK, Circuit Judge.

The suit in the court below arose out of an incident in Jimmy's Cafe in Columbus, Ohio at about 1:30 A.M., on March 1, 1971 in which Raymond L. Belcher, an off-duty policeman, shot and killed two young men and paralyzed a third while acting under color of law.

The suit was brought under authority of 42 U.S.C. §§ 1983 and 1985 for violation of the civil rights of the plaintiffs to due process and equal protection of the

laws. *Cf. Smartt v. Lusk*, 373 F.Supp. 102 (E.D.Tenn.1973), *aff'd*, 492 F.2d 1244 (6th Cir. 1974).

The plaintiffs in the case were Casey D. Stengel, a 22 year old man who was shot in the back, the bullet penetrating his spine and paralyzing him, and the administrators of the estates of the other two deceased men. The defendants were Officer Raymond L. Belcher, the City of Columbus, and a number of other police officers who were alleged to have conspired to cover up the facts concerning the shootings.

The District Court granted the motion to dismiss of the City of Columbus. The case was tried to a jury. At the close of the plaintiffs' case in chief the District Court granted the motions of the defendants, the police officers, other than Belcher, for a directed verdict and dismissed them from the case. The case then proceeded against the remaining defendant, Raymond L. Belcher, resulting in verdicts against him in favor of all of the plaintiffs.

The jury awarded Noe's estate $9,000 in compensatory damages and $1,000 in punitive damages, Ruff's estate $19,000 in compensatory damages and $1,000 in punitive damages, and Stengel $800,000 in compensatory damages and $1,000 in punitive damages. Belcher has appealed. We affirm.

Briefly, the evidence disclosed that at approximately 1:00 A.M., on March 1, 1971, Stengel, Ruff and Noe entered Jimmy's Cafe. Stengel, Ruff and Noe were in their early twenties. They recognized one of the other customers, Mrs. Agnes Morgan. She introduced them to her husband, Kyle, and Stengel and Noe decided to play a game of "bowling" with Mr. and Mrs. Morgan for a beer. After the game, Stengel took a seat at the bar. A dispute developed between Noe and the Morgans. Mrs. Morgan slapped Noe in the face and Noe slapped her back. The dispute escalated and the evidence as to what happened is sharply in conflict but it is undisputed that none of the young men were armed.

Belcher, who, as before noted, was off duty and out of uniform, had previously entered the bar with his girlfriend and they had seated themselves with another couple in one of the booths. Belcher was equipped with a can of mace and a 32 caliber revolver which police regulations required him to carry at all times. Without identifying himself as a police officer at any time, Belcher involved himself in the altercation. Belcher claimed that he was attacked by Stengel, Ruff and Noe. His girlfriend and the other couple in the booth corroborated his story. Stengel testified that Belcher was holding Ruff from behind, at which point Stengel grabbed Belcher and pushed him down to the floor. On the way down, Belcher was spraying Stengel in the face with the mace.

Belcher and other witnesses testified that Stengel, Ruff and Noe was "stomping" him. Stengel testified that he only kicked at the chemical mace in Belcher's hand when Belcher was on the floor and that Ruff and Noe were not doing anything to Belcher. Belcher drew his gun and shot Ruff in the chest, the bullet passing through his heart, and he shot Stengel in the back. The bullet entered Stengel's spinal canal and he was immediately paralyzed. There is some dispute whether Noe was shot inside or outside the bar. He was found on the sidewalk outside the cafe where Belcher had chased him. He was shot in the chest. Belcher testified that he grappled with Noe outside of the bar and struck him in the face with his gun and it went off.

A police laboratory report disclosed that Stengel was shot from a distance of 6 to 10 inches, Ruff from a distance of 12 to 20 inches and Noe from a distance of 6 inches.

Belcher testified that in the cafe he fired his pistol three times in the air.

■ Belcher contends that there is insufficient evidence to support the jury's finding, implicit in its verdict, that Belcher was acting under color of state law at the time of the incident in Jimmy's Cafe. He contends that the evi-

dence shows that he was engaged in private social activity, was out of uniform and off duty and never identified himself as a police officer. In other words, he contends that his actions were taken as a private citizen. Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167, 185, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

 However, "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws, supra*, at 111, 65 S.Ct. at 1040. The fact that a police officer is on or off duty, or in or out of uniform is not controlling. "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Johnson v. Hackett*, 284 F.Supp. 933, 937 (E.D.Pa.1968). See *Robinson v. Davis*, 447 F.2d 753 (4th Cir. 1971), *cert. denied*, 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972).

The chemical mace which Belcher sprayed was issued to him by the Columbus police department. Belcher carried his pistol pursuant to a regulation of the police department which required off-duty officers to carry pistols as well as mace at all times.

Although Belcher testified that he was attacked while trying to go outside of the bar to the telephone police,[1] Stengel testified that Belcher grabbed Robert Ruff from behind, around the neck and waist, after the dispute between Ruff, Noe and the Morgans had begun. There was other evidence which permitted an inference that Belcher, although he overstepped the bounds, intervened in the dispute pursuant to a duty imposed by police department regulations.

Dwight Joseph, who was the chief of police at the time of the incident, testified that a police officer was required to take action "in any type of police or criminal activity 24 hours a day." Chief Joseph further testified:

A. They would be subject to discipline if they didn't take action.

. . . . .

Q. Did Raymond Belcher act under the authority of those regulations in the incident that's here involved?

A. Yes, sir.

The record contains a letter dated April 8, 1971 written to Officer Belcher by the Director of the Department of Public Safety, Mr. James J. Hughes,[2] which closed the inquiry of the Police Firearms Board of Inquiry by exonerating Belcher. In relevant part, the letter states: "The inquiry is hereby closed with a specific finding that your actions were in line of duty . . . ." Officer Belcher also received workmen's compensation on the ground that he was "in line of duty under circumstances relating to police duties."

 The plaintiffs-appellees contend that the District Court should have decided, as a matter of law, that Officer Belcher was acting at the time under color of state law, in view of an admission by his counsel in open court to that effect and the undisputed testimony. We agree. Out of an abundance of caution the District Court submitted this factual issue to the jury for its determination. We see no objection to this procedure and hold that the evidence abundantly supports the jury's verdict.

It is not understandable to us why Officer Belcher, instead of entering into the affray, grabbing one of the participants from behind and spraying mace,

---

1. Belcher was impeached on this point by his prior inconsistent statement.

2. Mr. Hughes as City Attorney acted as counsel for Belcher at the trial.

did not announce to the participants that he was a police officer and demand that they desist in their altercation. This might have prevented injury to anyone. It appears to us that Belcher, as a police officer, used poor judgment.

Belcher's next contention is that the District Court erred in excluding evidence proffered of allegedly similar incidents involving Ruff, Noe and Stengel. Among other purposes, he claims that the evidence was admissible on the issue of who was the aggressor in the incident involved in the case at bar.[3] Incidentally, the Court also excluded evidence of similar incidents proffered by plaintiffs involving Belcher.

Belcher sought to introduce testimony by several people concerning four previous incidents in which Ruff, Noe and Stengel allegedly entered bars and caused trouble. One of the incidents allegedly happened earlier on the night of February 28, 1971, the night on which the three men were shot.

The proffer indicated that most of the witnesses would testify that in the other bars the trio was loud, abusive, profane, and that they attempted to cause trouble.

In addition, assuming that Belcher was acting under color of state law, the primary issue was whether Officer Belcher used excessive force, and not who was the first aggressor.

The appellees indicated that the proffered testimony would have been controverted, thus, introducing disputes over collateral issues, with the attendant possibility of confusion of issues and the certainty that the trial would be prolonged. The proffered evidence in no event would have been admissible on the issue of self defense because there is no proof that at the time of the shootings Belcher had any knowledge of the proffered incidents.

Finally, we observe that the proffered circumstantial evidence would have been cumulative, since Belcher's version of the incident is supported by direct evidence, the testimony of his girlfriend and the other couple who had been with them in the booth, although the jury chose not to believe the testimony.

Even when evidence is otherwise relevant and admissible, under the circumstances of this case the trial court had discretion to exclude it. The trial court has the duty to weigh the probative value of the evidence against the possibility of prejudice, confusion of issues, and waste of time, especially where the case is tried before a jury. *Smith v. Spina*, 477 F.2d 1140, 1146 (3rd Cir. 1973); *Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co.*, 438 F.2d 833, 838 (6th Cir. 1971); *In re Compudyne Corp.*, 255 F.Supp. 1004, 1008 (E.D.Pa.1966).

Rule 403 of the new Federal Rules of Evidence, which would be applicable if a new trial were ordered, is described in the Advisory Committee's Note as finding "ample support in the authorities." The rule states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ In light of the marginal probative value of some of the proffered testimony, its cumulative nature, its tendency to introduce collateral issues and prolong the trial, the District Court did not abuse its discretion in excluding the testimony proffered by Belcher. We note, parenthetically, that the District Court applied its discretion evenhandedly in this regard.

---

**3.** Belcher contends that the evidence is also admissible to prove a number of other matters, including intent, knowledge, habit, etc., none of which are shown to be material to the case. The same could be said about Belcher's conduct on other occasions.

As before stated, the court also excluded evidence which the plaintiffs sought to introduce which involved 46 "Use of Force" reports prepared and filed by Belcher with the police department, and an incident which occurred at Jimmy's Cafe on December 14, 1971, in which he struck another man in the presence of his girlfriend.

Belcher further contends that the District Court erred in admitting Stengel's medical records without supporting expert testimony concerning the cause, nature, extent and duration of his injuries and the reasonableness and necessity of the medical bills, which were admitted as part of the medical records.

The medical records in question are Stengel's medical records from Riverside Hospital, where he was admitted after the shooting and subsequently, and from the Ohio State University Hospitals, where he was admitted for rehabilitation and for treatment of medical problems which developed as the result of his paraplegia. Without going into detail, these records indicate that he has had no meaningful return of neurological function in the affected parts of his body, and they also indicate resulting medical problems, including treatment of decubitus ulcers, a suprapubic cystostomy, and an osteotomy of the right proximal femur with a resection of myostic bone block.

There is no question concerning the duration of Stengel's injuries. First, Clifford Stengel, Casey's father, testified without objection that Dr. Rossel of Riverside Hospital had told him that there was practically no chance that Casey would walk again. Second, the final pretrial order stated as an uncontroverted fact established by admission or stipulation that Casey Stengel's injuries were permanent. (Uncontroverted Fact 4). At trial, Stengel's counsel stated to the jury, without objection by the defense, that the parties had stipulated that the injuries were permanent. The parties also stipulated the mortality tables.

The medical records are Joint Exhibits 68 and 69. At trial, these records were identified by their respective custodians. When the plaintiffs moved admission of the medical records, the defense objected but not on the ground that they had not been properly identified specifically stating:

MR. HUGHES: Joint Exhibits 68 and 69, Your Honor, our objection to them is there has been no medical testimony as to cause of action, that they are—there are matters contained in there that are not connected.

The Court admitted the records over the objection.

The Court instructed the jury concerning past and future medical expenses. As Fed.R.Civ.Pro. 51 requires, the Court afforded counsel an opportunity to object to the charge out of the presence of the jury. Defense counsel stated that he had no objection to the entire charge.

■ Under Ohio law, a physician's diagnosis made in the course of his patient's treatment and contained in a hospital record is admissible as part of a business record. Ohio Revised Code § 2317.40; *Weis v. Weis*, 147 Ohio St. 416, 425, 72 N.E.2d 245 (1947). Because the diagnoses contained in the hospital records and the notations of treatments were admissible under Ohio law, they are likewise admissible in a federal court sitting in Ohio.Fed.R.Civ.Pro. 43(a).

Therefore, it is unnecessary to determine whether the hospital records, including diagnoses, would be admissible under the provisions of 28 U.S.C. § 1732(a), as that section read at the time of trial. *Cf. Willmore v. Hertz Corp.*, 437 F.2d 357, 359 (6th Cir. 1971). See Rule 803(6) of the Federal Rules of Evidence.

■ Assuming that a proper foundation is laid, diagnoses contained in hospital records of a patient's treatment are admissible under the Ohio business

records exception to the hearsay rule. The defendant-appellant objected on the specific ground that the plaintiffs had offered no expert medical testimony. The expert medical testimony was contained in the hospital records. Apparently, the defendant believed that diagnoses contained in medical records must be supported by expert testimony at trial. The business records exception contains no such requirement. See 16 O.Jur.2d Rev. "Damages" § 55.

■ The specific objection made is effective only to the extent of the grounds specified in the objection. 1 *Wigmore on Evidence* § 18; *Williams v. Union Pacific R.R.*, 286 F.2d 50, 55 (9th Cir. 1960); *Norwood v. Great American Indemnity Co.*, 146 F.2d 797, 800 (3rd Cir. 1944). The grounds specified are, as we have held, untenable.

■ With respect to past and future medical expenses, the defendant failed to object to the Court's charge to the jury, although he was afforded an opportunity to object if he wanted to.

Fed.R.Civ.Pro. 51 reads, in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Having declined to object to the Court's charge concerning past and future medical expenses, Belcher may not now raise the contention that the evidence was insufficient to submit the question of such damages to the jury.

Certainly, Belcher's contention does not fall within the limited exception to the requirement of an objection recognized in *Natesole v. Stratford*, 505 F.2d 804, 808 (6th Cir. 1974). The issue does not go to the heart of the case, nor is it a vital one which is decisive of the parties' rights.

Belcher next contends that the jury's verdict is not supported by the evidence; that the plaintiffs did not pray for punitive damages and that the evidence does not support an award of punitive damages; that the amounts of damages are grossly excessive; and that the court erred in failing to instruct the jury to disregard certain evidence.

■ Concerning liability, the verdict is supported by the overwhelming evidence. The minor injuries consisting of bruises and cuts received by Belcher on his face which did not require hospitalization do not support his claim of self defense or justify his use of excessive force in killing two young men and permanently maiming a third. Concerning punitive damages, plaintiffs' counsel moved orally to amend the complaint to ask for punitive damages. Fed.R.Civ. Pro. 15(b). As with other issues which Belcher has raised, he did not object to the Court's instruction concerning punitive damages. Our observations concerning his failure, *supra*, are likewise applicable here. Stengel's testimony, in conjunction with the fact that the bullets were fired from close range without warning into vital parts of the victims' bodies, supports the award of punitive damages.[4]

■ Belcher further contends that the damages recovered by the plaintiffs are not supported by the evidence and are grossly excessive. The District Court rejected this contention in denying Belcher's motion for a new trial. In the absence of a showing of bias, passion, or corruption on the part of the jury, excessiveness of the jury's verdict is a question primarily addressed to the trial court's discretion. On appeal, this court considers only whether the trial court

4. Punitive damages may be recovered in actions under 42 U.S.C. § 1983. *McDaniel v. Carroll*, 457 F.2d 968 (6th Cir. 1972), *cert. denied*, 409 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (1973); *Basista v. Weir*, 340 F.2d 74, 87 (3rd Cir. 1965).

has abused its discretion. *Shepherd v. Puzankas*, 355 F.2d 863, 865 (6th Cir. 1966); *Kroger Co. v. Rawlings*, 251 F.2d 943, 945 (6th Cir. 1958).

Noe's estate recovered $9,000 in compensatory damages, Ruff's estate recovered $19,000 in compensatory damages, and Stengel recovered $800,000 in compensatory damages. Each of the plaintiffs also recovered $1,000 in punitive damages.

It is undisputed that Noe and Ruff lived for approximately 45 minutes after they were shot. (Document 58, page 6 of record on appeal, which is Belcher's motion for a new trial uses this figure). There is evidence that both were conscious during this period. Ruff was survived by his widow. He was employed as a cab driver. His claims involved both wrongful death and survivorship. In our opinion, the trial court did not abuse its discretion in deciding that these damages were not grossly excessive.

■ Understandably, Belcher's attention is directed primarily to Stengel's recovery of $800,000 in compensatory damages. In our opinion, these damages are also supported by substantial evidence, and the District Court did not abuse its discretion in holding that the damages were not grossly excessive.

Stengel was 22 years old when he was shot. The parties stipulated that his life expectancy at that time was 40 years. He was a veteran and had been accepted by Ohio State University for enrollment during the Spring quarter of 1971. He had previously been employed as a mail clerk with the U.S. Post Office. Stengel attempted to continue his education after he was released from the hospital by attending Franklin University, but was unable to do so because of decubitus ulcers which developed as the result of sitting.

Stengel testified concerning the care that he was then receiving from his housekeeper, and his father, Clifford Stengel, testified concerning the assistance which Casey required in everyday matters, such as putting on some of his clothes, or getting to the bathroom and back.

The testimony concerning his pain from the time of the shooting was extensive. He testified to intense pain as he lay in the hospital immediately after he was shot. He testified that his pain continued, due to complications, while he was in the hospital and after he was released from the hospital. Pain from various conditions resulting from his immobility continued at least until the time of trial and the jury could infer that he would continue to have such pain in the future.

Stengel's injuries were stipulated to be permanent. It was no doubt obvious to the jury from the testimony and from seeing him, that he had lost the ability to walk, to eliminate normally, and, probably, to enjoy a normal married life. He testified that his problems were at least partly responsible for his separation and subsequent divorce from his wife. Such matters, the jury could infer, would result in future mental anguish.

Although Belcher contends that the verdict is the result of bias, prejudice or passion, we have examined the record and are unable to find any such evidence.

Finally, Belcher contends that the District Court erred in failing to give a requested instruction which instructed the jury to disregard certain matters both as to liability and damages. Belcher claims that the testimony to which the instruction refers was admitted only in support of the conspiracy claim, which the Court dismissed after the close of plaintiffs' case.

■ Belcher was not entitled to the requested instruction, since it would have withdrawn at least part of Stengel's pain and suffering while awaiting treatment at the hospital. The Court properly instructed the jury that Stengel could recover damages only for injury suffered as a proximate result of the shooting, and for future damages which were reasonably certain to occur. Belch-

er did not object to the charge as given and, for the reasons noted earlier, he cannot raise this issue on appeal. Fed.R. Civ.Pro. 51.

Affirmed.