899 F.2d 14
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John W. CORDER and Lois A. Ewin, Plaintiffs-Appellants,
v.
METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,
TENNESSEE, Troy Stevens, John Burns and Billy
Lynch, Defendants-Appellees.
 No. 89-5699.
 United States Court of Appeals, Sixth Circuit.
 March 27, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and ANN ALDRICH, District Judge.*
 PER CURIAM:
 
 
 1
 Appellants John Wallace Corder and Lois Alberta Ewin appeal the United States District Court for the Middle District of Tennessee's grant of appellees'[1] motion for summary judgment. We AFFIRM the District Court's grant of appellees' motion for summary judgment.
 
 
 2
 Troy Stevens was a deputy sheriff with the Metro sheriff's department. He was hired in August of 1985. As part of a pre-employment screening procedure, Dr. Roger Jones conducted a psychological evaluation of Stevens. Dr. Jones submitted a report that did not specifically endorse Stevens and that expressed certain reservations about his history and personality.
 
 
 3
 After Stevens had been hired, officer Tommy Cox conducted a polygraph of Stevens. Cox submitted a statement concluding that he could not recommend Stevens for employment. Cox cited as bases for his conclusion Stevens' past employment experience, drug usage, a criminal charge, and incidents of minor theft.
 
 
 4
 Stevens began his employment with Metro as a control room officer. He completed his in-service training, including qualification at the gun range, in September of 1985. His six-month evaluation gave him above-standard performance ratings. Stevens began to serve periodically as a transportation officer. At no time did he have authority to make arrests or perform any duties outside of guarding prisoners at the jail or while they were being transported. The Metro sheriff's department's firearms policy allows correctional officers to carry weapons when transporting prisoners. When a prisoner in Stevens' custody once tried to escape, Stevens drew his weapon but apprehended the prisoner without firing.
 
 
 5
 Because the sheriff's department kept only one handgun for use while transporting prisoners to the hospital, some correctional officers, with the knowledge of their supervisors, carried their personal firearms to and from work. Stevens did not routinely carry his own gun in his car except when going to and from work.
 
 
 6
 In the early morning of August 31, 1986, Troy Stevens shot and killed Nathan Corder with his gun. Stevens had gone to a night club the previous night for a couple of hours after work. He was on his way home when he stopped at the Grand Ole Market in Hermitage, Tennessee. He spoke briefly with Nathan Corder, a mentally handicapped man Stevens knew and who knew Stevens was a deputy sheriff. Corder approached Stevens as Stevens was leaving and asked for a ride home. Stevens had given Corder rides before, but on this occasion, he refused. Corder persisted in his request, and Stevens eventually drew his nine millimeter automatic pistol from between the front seats of his car. He pointed it at Corder in an effort to tease and/or dissuade him. The gun fired a bullet which entered Corder's chest, and Corder died within the hour.
 
 
 7
 Appellants who are the parents of Nathan Corder argue on appeal that genuine issues of material fact exist with respect to (1) whether Stevens was acting under color of law at the time of the shooting, (2) whether the hiring of Stevens occurred under conditions which the Chief Deputy should have known would create a threat to the constitutional rights of the citizenry, and (3) whether the firearms policies and practices of Metro were deliberately indifferent to the constitutional rights of the citizenry.
 
 
 8
 In order to prevail on their claim under 42 U.S.C. Sec. 1983, appellants must demonstrate (1) that a constitutional deprivation occurred, (2) that the deprivation occurred without due process of law, and (3) that appellees caused the deprivation while acting "under color of law." Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 279 (6th Cir.1987). Appellants argue that a genuine issue of material fact exists regarding whether Stevens was acting under color of state law when he shot Corder. Appellants rely upon two cases decided by this Court in which off duty police officers were found to have been acting under color of law when they injured private citizens. In Stengel v. Belcher, 522 F.2d 438 (6th Cir.1975), cert. dismissed, 429 U.S. 118 (1976), this Court found that a police officer who was off duty and out of uniform in a bar was acting under color of law when he shot several men who were involved in an altercation. This Court stressed that the officer carried mace (which was used prior to the shooting) and his pistol "pursuant to a regulation of the police department which required off-duty officers to carry pistols as well as mace at all times." Id. at 441. The case differs from the one before us, however, for in the present case, Stevens was not required to carry a gun. Further, Stevens in no way acted pursuant to a duty imposed by department regulations. He was not attempting to intervene in a dispute as the officer in Stengel was,[2] and furthermore, he had no authority to involve himself in an altercation of any kind or to use a gun in a situation such as the one involving Corder that presented itself.
 
 
 9
 In Layne v. Sampley, 627 F.2d 12 (6th Cir.1980), this Court found that an officer who was off duty but in possession of his service revolver, "which was his own property and which he was authorized but not required to carry when off-duty," acted under color of state law. Id. at 12. However, the facts of Layne are distinguishable from those of the case before us. The officer in Layne had been called to Layne's house to investigate a complaint of a domestic disturbance. Layne later threatened the officer, and when Layne spotted the officer in civilian clothing, he approached him and began an argument. The argument during which the officer shot Layne, then, had its genesis in the officer's performance of his police duties. Id. at 13. Further, the Court based its decision on (1) the fact that the officer had authority to carry the gun only because he was a police officer,[3] and (2) the fact that Layne had threatened the officer by phoning the police headquarters and thus the threat was received through a police agency. Id.
 
 
 10
 Appellants also argue that because Stevens identified himself as a police officer, he was acting under color of law. Appellants rely, however, upon Stevens' identification of himself as a deputy sheriff during his conversation with the police after the shooting. This identification after the injury does not render the shooting an act committed under color of state law.
 
 
 11
 Stevens clearly acted in a personal rather than official capacity. He had left work hours before the shooting, and had spent some time in a bar after work. The fact that he may have been permitted to carry his gun to and from work does not by itself render any use of the gun an act done under color of law. Further, the accidental shooting of the decedent was not an attempt to further the interest of the sheriff's department or to perform his official duties. Stevens was employed solely to guard prisoners. He had no authority to make arrests or perform any other law enforcement duties. "Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. Sec. 1983." Stengel, 522 F.2d at 441. Having found that appellants have not set forth any evidence contrary to the District Court's conclusion that Stevens was acting in a purely personal capacity, we hold that the District Court did not err in finding that no issue of material fact exists with respect to whether Stevens acted under color of law.
 
 
 12
 Appellants further argue that there are genuine issues of material fact regarding (1) whether Chief Deputy Lynch in hiring Stevens should have known that Stevens would create such a threat to the constitutional rights of the citizenry as to play an affirmative part in the alleged deprivation of Corder's civil rights by Stevens, and (2) whether the firearms policies and practices of the Metro sheriff's department are affirmatively linked to the deprivation of Corder's civil rights by Stevens. Because a constitutional violation did not occur while Stevens was acting under color of law, there can be no section 1983 violation. Adickes, 398 U.S. at 150; Nishiyama, 814 F.2d at 279.
 
 
 13
 Therefore, because Stevens was not acting under color of state law when he shot Corder, the District Court properly granted appellees' motion for summary judgment. Accordingly, we AFFIRM the decision of the District Court.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Appellees are the Metropolitan Government of Nashville and Davidson County (Metro), and Metro employees Troy Stevens, John Burns and Billy Lynch
 
 
 [2]
 The Court found that "although he overstepped the bounds, [Stengel] intervened in the dispute pursuant to a duty imposed by police department regulations." Stengel, 522 F.2d at 441
 
 
 [3]
 The Court noted that "[p]ermission to carry a handgun in Tennessee is extended only to law enforcement officers." Layne, 627 F.2d at 12