**Andrew J. NEUENS, Plaintiff,**

v.

**CITY OF COLUMBUS, et al., Defendants.**

No. 99–CV–1384.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 11, 2003.

---

James Donald McNamara, Columbus, OH, for Plaintiff.

Robert Latham Washburn, Jr., Cloppert Portman Sauter Latanick & Foley–2, Columbus, OH, Edward Joseph Dowd, Surdyk Dowd & Turner Co. LPA, Dayton, OH, Lisa Weekley Coulter, Williams & Petro Co., LLC, Columbus, OH, for Defendants.

## *OPINION AND ORDER*

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judgment, pursuant to the Sixth Circuit's remand order issued upon resolution of

Defendant Officer Isaac Bridges' interlocutory appeal.

Defendant Officer Bridges filed a Motion for Summary Judgment on April 16, 2001. On November 1, 2001, this Court denied that motion with respect to the Plaintiff's claims brought under 42 U.S.C. § 1983. Subsequently, the Sixth Circuit reversed the Court's ruling on the ground that the Court had allowed the parties to stipulate that Officer Bridges was acting under color of state law at the time of the incident upon which the Complaint is based.[1] The Sixth Circuit vacated the Court's ruling and remanded the cause to this Court for an independent determination of whether Officer Bridges was acting under color of state law at the time of the incident.

For the following reasons, the Court finds that Officer Bridges was not acting under color of state law at the time of this incident, and **GRANTS** the Defendant's Motion for Summary Judgment on the Plaintiff's claim brought under 42 U.S.C. § 1983.

## II. FACTS AND PROCEDURAL HISTORY

On the evening of December 25, 1998, the Plaintiff, Andrew Neuens, went out with two friends, Nate Faught and Chad Spinosi. The men went first to a neighborhood establishment, then to a dance club. Subsequently, they went to the Waffle House restaurant to eat. They arrived at the Waffle House at 3385 E. Dublin–Granville Road at approximately 2:00 a.m. on the morning of December 26, 1998.

According to the Plaintiff, the Waffle House restaurant is fairly small. The outer door leads into a small foyer or hallway, and an inner door opens from that foyer into the restaurant. Inside, the cash registers are directly across from the doorway. To the right of the registers is a jukebox, behind which are three of the restaurant's booths.

When the Plaintiff and his companions entered the Waffle House, they seated themselves in the first booth nearest the door, behind the jukebox. The Plaintiff sat alone on the side of the booth that allowed him to face the door and cash registers. Mr. Faught and Mr. Spinosi sat across from him, facing the other booths. Upon entering the restaurant, the men noticed a security guard, Defendant John Padgett, by the door.

Soon after the Plaintiff and his friends began to eat the food they had ordered, a group of people consisting of Defendants Officer Isaac Bridges, Ernest Parker, and Josh Kincaid, along with another man and two women ("Defendant group"), entered the restaurant. Prior to entering the Waffle House, the Defendant group had been at a bowling alley. While at the bowling alley, some members of the group, including Defendant Parker, engaged in a fight that Defendant Bridges, who is a Columbus Police Officer, took no action to prevent, stop, or report. Defendant Bridges observed the fight while he was at the bowling alley's concession stand. The bowling alley's security guards broke up the fight.

According to the Plaintiff, the Defendant group began creating problems as soon as they entered the Waffle House by acting "loud, drunk, and obnoxious." Defendant Bridges acknowledged that at least two members of his group were visibly inebriated, and that he himself had probably consumed alcohol that night, as well. When they came in, the Defendant group

---

[1] The Defendant contends, and the Plaintiff agrees, that the parties did not stipulate that Officer Bridges was acting under color of law. Rather, he states that he admitted in his Answer, and conceded in other pleadings, that he was acting under color of law.

seated itself at the third booth behind the jukebox.

The Plaintiff alleges that the Defendant group continued to harass the Plaintiff and his companions after they sat down at their booth. Specifically, Defendant Kincaid yelled expletives toward them. Although neither the Plaintiff nor his friends had ever met anyone in the Defendant group prior to that encounter, apparently Mr. Kincaid mistook the Plaintiff and his friends for individuals who had previously tried to steal his car. According to Officer Bridges' deposition testimony, each of the two times Defendant Kincaid yelled toward the Plaintiff's group, Officer Bridges grabbed him by his shirt and sternly told him to be quiet or else they would leave the restaurant. After Mr. Kincaid yelled toward the Plaintiff's group the first time, one of the women with the Defendant group indicated that she thought the entire group should leave the restaurant before Mr. Kincaid got in a fight with someone. After Mr. Kincaid's second outburst, all of the members of the group, except for Mr. Kincaid, agreed that they should leave before things escalated further.

When the Plaintiff and his companions finished eating their meal, Defendant Padgett approached their table and advised them to leave the restaurant. Subsequently, Mr. Spinosi got out of the booth, and turned to walk out of the restaurant. As soon as Mr. Spinosi got up, the Defendant group also got up, passed the Plaintiff's table, and moved toward the exit.[2] When Mr. Spinosi was in the small foyer on his way to the outer door, Defendant Parker pushed him from behind. During his deposition, Officer Bridges testified that after Mr. Parker pushed Mr. Spinosi, Officer Bridges pulled Mr. Parker back and then stepped between the two men so that Mr. Spinosi was in front of him and Mr. Parker was behind him. Officer Bridges then proceeded to talk to Mr. Spinosi, trying to convince him to leave the restaurant rather than escalating the fight. Officer Bridges testified that he assured Mr. Spinosi that he had Mr. Parker under control.

The Plaintiff stood up from his table after the Defendant group had already passed by. As he approached the cash register, he heard a commotion behind him, and turned to see what was happening. The next thing the Plaintiff remembers is waking up in the hospital hours later. The Plaintiff subsequently learned that Defendant Parker, after pushing Mr. Spinosi, walked toward the register and punched the Plaintiff from behind, knocking him to the floor, unconscious. Apparently, Mr. Parker then kicked the Plaintiff in the head. After speaking with Mr. Spinosi, Officer Bridges turned around when he heard one of his companions repeatedly yelling, "let's go." When he turned around, he saw Mr. Parker standing near the Plaintiff. At that point, Officer Bridges grabbed Defendant Parker and pulled him out of the restaurant. Because a crowd had formed around them making it difficult to leave, another member of the Defendant group also grabbed Mr. Parker to pull him out of the restaurant. The Defendant group then departed the Waffle House in two separate vehicles. Officer Bridges did not notify on-duty police officers about the fight that had taken place.

After the Defendant group left, Defendant Padgett radioed his employer, Defendant Smith Detective & Security, Inc. ("SDSI" or "Smith Security"), for backup. After contacting his employer, a Smith Security supervisor and a uniformed Co-

---

**2.** Apparently, the Plaintiff and his friends decided to leave just as the Defendant group had come into agreement that it would be best to leave before the tension between the groups escalated.

lumbus police officer arrived at the Waffle House within four minutes.

On December 23, 1999, the Plaintiff filed a Complaint with this Court, and on March 3, 2000 he filed an Amended Complaint against Defendants City of Columbus, Officer Isaac Bridges, Ernest Parker, Josh Kincaid, John Padgett, Smith Security, and J. Thomas & Co., Inc. d/b/a Waffle House ("Waffle House"). In his Amended Complaint, the Plaintiff asserted the following causes of action: (1) violation of 42 U.S.C. § 1983 as against the City of Columbus and Officer Bridges; (2) violation of 42 U.S.C. § 1985 as against the City of Columbus and Officer Bridges; (3) assault and battery as against Defendants Bridges, Parker, and Kincaid; (4) intentional infliction of emotional distress as against Defendants Bridges, Parker, and Kincaid; (5) negligent infliction of emotional distress as against all Defendants; and (6) negligence as against Defendants Waffle House, Smith Security, and Padgett.

On June 25, 2001, the Plaintiff dismissed the City of Columbus as a party. During a hearing held on October 12, 2001, the Plaintiff indicated that he was no longer pursuing his claim brought pursuant to 42 U.S.C. § 1985. The Plaintiff also dismissed his claim of negligent infliction of emotional distress, and his claim of assault and battery as against Officer Bridges. Accordingly, at the time of the hearing on October 12, 2001, the following claims remained pending: (1) violation of 42 U.S.C. § 1983 as against Officer Bridges; (2) assault and battery as against Defendants Parker and Kincaid; (3) intentional infliction of emotional distress; and (4) negligence.

On October 12, 2001, the Court held a hearing on the Motions for Summary Judgment that had been filed by Officer Bridges, by Defendants Smith Security and John Padgett, and by Defendant Waffle House. In an opinion issued on November 1, 2001, the Court granted the Motions with respect to the Plaintiff's claims for intentional infliction of emotional distress, and denied the Motions with respect to the Plaintiff's claims of negligence.[3]

The Court also denied Officer Bridges' Motion for Summary Judgment on the Plaintiff's 42 U.S.C. § 1983 claim. In its opinion, the Court did not address the issue of whether Officer Bridges was acting under color of law at the time of this incident because Officer Bridges had conceded that he was acting under color of law at the hearing on his motion.[4] The Court found, however, that the Plaintiff had raised a genuine issue of material fact with respect to whether Officer Bridges had violated his constitutional right to be free from a state-created danger. The Court denied Officer Bridges' request for qualified immunity on the ground that the right to be free from state-created danger was clearly established at the time of this incident.

Subsequently, the Sixth Circuit concluded that this Court erred when it allowed the parties to stipulate that the Defendant had acted under color of state law, as that is an issue of law that must be decided by the Court, not the parties. *Neuens v. City of Columbus*, 303 F.3d 667 (6th Cir.2002). Specifically, the Court held that, "[w]hether Bridges was acting under color of law is a legal issue." *Id.* at 670. The Sixth

---

**3.** The Court granted Officer Bridges' Motion for Summary Judgment with respect to the Plaintiff's negligence claim on the ground that the Plaintiff had failed to plead a claim of negligence as against Officer Bridges.

**4.** Although not mentioned in the Court's prior opinion, Officer Bridges also admitted in his Answer to the Plaintiff's Amended Complaint that he had been acting under color of state law at all material times.

Circuit vacated the Court's ruling and remanded the case to this Court for an independent determination of whether Officer Bridges was, in fact, acting under color of law at the time of this incident. If he was not, then he is entitled to summary judgment on the Plaintiff's § 1983 claim.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993) (citation omitted). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

The Plaintiff alleges that Defendant Bridges has infringed his constitutional rights in violation of 42 U.S.C. § 1983.[5] To succeed on a claim for violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir.2001). Accordingly, for the Plaintiff's § 1983 claim to succeed, Officer Bridges must have been

---

**5.** That statute reads, in relevant part:

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

acting under color of state law at the time of the incident that gave rise to the Plaintiff's Complaint.

 It is the nature of the officer's actions, not the fact of his being on or off duty, that determines whether he acts under color of law. *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975). An officer acts under color of law when he exercises power " 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). In other words, an officer acts under color of law when he acts in performance of his official duties, whether he strictly adheres to those duties or oversteps the bounds of his authority. *Stengel*, 522 F.2d at 441 (citing *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). Conversely, when an officer's acts fall within the ambit of his personal, private pursuits, those acts are not actions under color of law for purposes of § 1983. *Id.; see Waters*, 242 F.3d at 359 ("[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.") (citations omitted).

The Sixth Circuit has looked to various factors to determine whether an officer was acting in performance of his official duties, or whether he was acting in pursuit of his personal interests. *See Mooneyhan v. Hawkins*, 129 F.3d 1264, 1997 WL 685423, *4 (6th Cir.1997) (unpublished decision) (recognizing factors such as flashing a badge, identifying oneself as an officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations as indicating actions under color of law) (citations omit-

ted). For example, in *Stengel*, an off-duty officer shot three individuals when he intervened in an altercation at a bar. The court recognized that the officer was off-duty and out of uniform when he was at the bar, but that he nonetheless acted under color of law when he intervened in the fight. *Stengel*, 522 F.2d at 441. In making that determination, the court considered the following factors: (1) the officer used mace that had been issued to him by the police department; (2) he had his pistol with him because he was required to carry it pursuant to a police department regulation; and (3) he intervened in the dispute pursuant to a duty imposed by police department regulations. *Id.* (recognizing that, even though the officer may have overstepped the bounds of his duties, he still acted pursuant thereto). Similarly, in *Layne v. Sampley*, 627 F.2d 12 (6th Cir.1980), an off-duty officer was found to have acted under color of law when he shot an individual based on the fact that he was authorized to carry the gun that he used only because he was an officer, and the argument that led to the shooting arose from the officer's performance of his official duties. *Id.* at 13.

In *Redding v. St. Eward*, 241 F.3d 530 (6th Cir.2001), on the other hand, the court found that a police officer was not acting under color of law when she took action to effectuate the arrest of an individual. In *Redding*, St. Eward, an off-duty police officer, called 911 to report an intruder at the home where she was staying for the night. After her call to 911, officers arrived at the home, and found the intruder armed with a steel pipe, kicking on the door of the home. The 911 officers arrested the woman and charged her with attempted home invasion. Under these circumstances, the Sixth Circuit concluded that St. Eward did not act under color of law in light of the fact that, at the time of the incident, she was off-duty, out of uniform, and per-

formed acts like those that any private citizen in her situation would have performed. *Id.* at 533 (recognizing that St. Eward herself did not physically arrest, restrain, or attempt to restrain the intruder, nor did she direct the responding 911 officers either to arrest the would-be intruder or to act in any other manner); *see Waters,* 242 F.3d at 359–60 (finding that a city alderman's pattern of harassing and abusive conduct toward his assistant did not constitute actions under color of law when they were taken for his own personal purposes and were actions that the alderman could have taken even if he had not been a city alderman).

■ Based upon the evidentiary record before it, the Court finds that Officer Neuens was not acting under color of law at the time of the incident giving rise to the Plaintiff's claims. Throughout the event, Defendant Bridges never told anyone he was a police officer. He did not give any non-verbal indication that he was a police officer, as he was out of uniform and never displayed either his badge or his police-issued gun. He did not engage in affirmative conduct to prevent the incident before it began. After the incident, he neither arrested nor charged his friends with any crimes, nor reported the incident to on-duty police officers. In sum, none of the factors that traditionally indicates state action by an off-duty officer was present here.

Additionally, the fact that Defendant Bridges neither intervened in a meaningful manner before the altercation began nor arrested his friends afterward, but helped them flee the scene, indicates that he was acting in pursuit of his own personal interests, not in accordance with any official authority. Whether he had been a police officer or not, he would have been in the same position, and probably would have acted just as he did. As the Sixth Circuit stated:

The record clearly demonstrates that Bridges was acting in his private capacity on the morning of December 26, 1998. Bridges was not in uniform, he was not driving a police car, and he did not display a badge to Neuens or anyone else at the Waffle House restaurant. Bridges was not at the Waffle House restaurant pursuant to official duties; rather, he was out with is personal friends for social reasons. Neither Bridges nor his friends made any suggestion that Bridges was a police officer. In fact, Neuens concedes in his appellate brief that he "had no idea that one of them, Appellant Bridges, was a Columbus police officer." (Appellee's Br. at 5).

*Neuens v. City of Columbus,* 303 F.3d 667, 670–71 (6th Cir.2002).

■ The Court recognizes that Officer Bridges has indicated in his pleadings, in his deposition testimony, and through his counsel in open court that he intended to act in accordance with his official capacity during this incident. In particular, he states that he intended to act pursuant to his duty to prevent a breach of the peace when he told Defendant Kincaid to sit quietly in the booth at the Waffle House, and when he pulled Mr. Parker away from Mr. Spinosi and ultimately out of the restaurant. Consideration of Officer Bridges' state of mind, according to *Waters,* is a key determinant of "whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Waters,* 242 F.3d at 359. Nonetheless, the officer's intent is not the sole determinant of whether he acted under color of state law, nor could it be. If an officer's intent was the sole determinant of whether the officer acted under color of state law, an off-duty officer would have the ability to assault a prisoner, and claim that he intended to act only in his personal capacity, based on his personal dislike for the prisoner, and avoid a claim under 42 U.S.C. § 1983. In such a case, this Court

would be loath to find that, even if the officer was off-duty and did not use any state-issued equipment in engaging in the assault, he was not acting pursuant to his power as a police officer. Thus, just as the officer's stated intent could not control in that situation, it cannot control the analysis here. Rather, the Court must examine the totality of the circumstances, and evaluate whether the officer was acting under color of state law based on his objective, visible conduct.[6]

Despite the Officer's stated intent, even when Officer Bridges told Defendant Kincaid to be quiet and pulled Defendant Parker away from Mr. Spinosi and out of the restaurant,. he was acting as a private citizen, and not as a police officer. Like the officer in *Redding* and the city alderman in

*Waters*, Officer Bridges performed acts like any other private citizen in his position would have performed. Indeed, the other members of the Defendant group discussed leaving the restaurant when Mr. Kincaid yelled toward the Plaintiffs, and took steps to remove Mr. Parker from the restaurant after he got involved in a physical altercation with Mr. Spinosi. Thus, Officer Bridges not only acted like a private citizen in his situation would have acted, he acted like the private citizens involved in the situation did act.

Accordingly, the Court finds that Defendant Bridges was not acting under color of law at the time of this incident, and **GRANTS** Defendant Bridges' Motion for Summary Judgment on the Plaintiff's 42 U.S.C. § 1983 claim.[7]

---

**6.** The Court notes that some Sixth Circuit precedent indicates that it might be proper for the Court to conclude that Officer Bridges acted under color of state law based solely on his counsel's admission to that effect in open court. In *Stengel*, the Sixth Circuit stated as follows:

> The plaintiffs-appellees contend that the District Court should have decided, as a matter of law, that Officer Belcher was acting at the time under color of state law, in view of an admission by his counsel in open court to that effect and the undisputed testimony. We agree. Out of an abundance of caution the District Court submitted this *factual issue* to the jury for its determination. We see no objection to this procedure and hold that the evidence abundantly supports the jury's verdict.

*Stengel*, 522 F.2d at 441 (emphasis added). This portion of *Stengel* indicates that the issue of whether an officer acts under color of law is a factual issue. Although the opinion states that the district court should have decided as a matter of law that the officer was acting under color of state law, that statement seems simply to recognize that the defendant's admission to that effect in open court bound the parties with respect to this issue. In other words, the statement is akin to a recognition that, based on the defendant's admission, the plaintiff was entitled to summary judgment with respect to this issue. In this respect,

*Stengel* is in harmony with the recent trend among federal courts to submit the issue of whether an officer acts under color of state law to a jury for its determination. *See* Symposium, *Dialogue on State Action*, 16 Touro L. Rev. 775, 792 (2000) (Professor Erwin Chermerinsky stating that, although courts used to view this issue as a legal issue for determination by the court, recently, courts have begun to view this fact-intensive issue as presenting a jury question).

To the extent that *Stengel* indicates that the issue of whether an officer acts under color of law is a factual issue, however, it conflicts with the opinion of the Sixth Circuit panel that remanded this case to this Court that the issue is one of law that must be decided by the Court. The Court now examines this issue in accordance with the remand order, and simply views the Defendant's admission as one factor that it considers in making its independent legal determination that Officer Bridges did not act under color of state law.

**7.** The Sixth Circuit opinion remanding the case to this Court for reconsideration states: "If after its independent review the district court concludes that Bridges did not act under color of state law, we instruct the district court to dismiss the complaint for failure to state a claim upon which relief may be granted. Furthermore, where no action was taken under color of state law, the district court

### B. State Law Claims

Having granted summary judgment to Defendant Bridges on the Plaintiff's section 1983 claim, only the following claims remain pending: (1) assault and battery as against Defendants Parker and Kincaid; and (2) negligence as against Defendants Waffle House, SDSI, and Padgett.

■ Generally, when a district court dismisses the federal claims in a case before trial, it should dismiss the pendent state claims, as well. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996) (citations omitted). "Under 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction." *Dobbs–Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 546 (6th Cir.1999).

Therefore, in light of the Court's grant of summary judgment to the Defendant on the only remaining federal claim, the Court **DISMISSES** the remaining state law claims.

### V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** summary judgement to Defendant Bridges on the Plaintiff's 42 U.S.C. § 1983 claim, and **DISMISSES** the remaining state law claims.

**IT IS SO ORDERED.**

need not reach the issue of qualified immunity. *Carlson* [*v. Conklin* ], 813 F.2d 769, 770 (6th Cir.1987)." Hence, based on the finding that Officer Bridges was not acting under color of state law, the Court need not address Officer Bridges' claim of qualified immunity.