NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0522n.06

Case No. 19-1386

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 16, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KERI-YAKEI MORRIS; CALVIN GALLOWAY, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| CITY OF DETROIT, MICHIGAN; JENNIFER LEE ADAMS, | ) ) ) | |
| Defendants-Appellees. | | |

_____/

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

**MERRITT, Circuit Judge.** This is an appeal from an action brought pursuant to 42 U.S.C. § 1983 by plaintiffs Keri-Yakei Morris and Calvin Galloway. Plaintiffs allege violations of the Fourth and Fourteenth Amendments based on claims of wrongful seizure and excessive force by defendants Jennifer Lee Adams of the City of Detroit, Michigan, police department, and the City of Detroit, Michigan. While on duty, Adams went to plaintiffs' residence seeking repayment of a personal debt owed to her by Morris, which resulted in a physical altercation between the two women, and the discharge of Adams' police-department-issued firearm. Because Adams acted only in a personal capacity during the incident, she was not acting under color of state law, and District Court Judge Avern Cohn therefore granted summary judgment to defendants. Relying on the same reasoning as the district court, we affirm its judgment.

**I.**

Defendants dispute plaintiffs' account of the facts, but they concede that we must view the facts in the light most favorable to plaintiff for purposes of summary judgment. The district court accordingly found the following "undisputed" facts as set forth by plaintiffs.

On June 20, 2017, Adams clocked out and left work to go to plaintiffs' house at approximately 4:30 pm, even though she was scheduled to work until 6:00 pm that day. Upon arriving at the house, Adams began to knock aggressively on the door. When Morris opened the door, Adams placed her foot in the door so that Morris could not close it. Adams then entered the house and began questioning Morris about repayment of a $300 personal loan. Adams became hostile, pointing her finger in Morris' face and initiating a physical confrontation during which Morris sprayed Adams in the face with mace. After being sprayed with mace, Adams drew her gun and fired a shot. The bullet did not hit Morris.

Before the confrontation between Morris and Adams escalated, Galloway was upstairs on the second floor. At some point during the confrontation, Galloway began making his way down the stairs. As he descended, Adams threatened him, stating she would do physical harm to him if he came downstairs. Galloway did not intervene in the dispute, but the bullet fired by Adams grazed Galloway, who was in the next room.

After discharging her gun, Adams fled the scene. Galloway called 911 immediately after Adams left the house and Detroit police officers responded. Criminal charges were brought against Adams in state court, but Adams was acquitted of all criminal charges because the state court found that Morris had lied to the court about the incident.[1] In addition to facing state criminal

---

[1] The state court judge held: "The Court finds, as a fact, that during this trial, Ms. Morris lied; she fabricated a story that defied logic and explanation; her testimony was offensive; and she tried to marry her testimony of what occurred with the physical evidence as found by the Investigating Police Officers; and she was unable to do so . . . the Court finds that it cannot believe anything that Ms. Morris said, during her testimony, in good conscience. . . . because

charges, Adams was also suspended after an internal police department investigation determined that she violated various police department policies and procedures. The internal investigation found that, at the time of the incident, Adams was not in police uniform. However, she was wearing her badge, had a waistband holster that displayed her department-issued gun, and had her department-issued handcuffs. The internal police investigation determined that Adams was technically "on duty" when she clocked out and went to plaintiffs' home at 4:00 pm because she was scheduled to work until 6:00 pm the day of the incident.

Based on this occurrence, plaintiffs filed a complaint in state court, which defendants removed to federal court, containing the following claims: Count I- 42 U.S.C. § 1983, Fourth Amendment violation, "False Arrest"; Count II-42 U.S.C. § 1983, Fourteenth Amendment violation, "Substantive Due Process"; Count III-42 U.S.C. § 1983, Fourth Amendment violation, "Substantive Due Process"; Count IV- "Municipal Liability for Constitutional Violations"; and Count V- "Michigan Constitutional Claims." Plaintiffs requested damages of $1,000,000, as well as costs and attorney fees.

Defendants filed separate motions for summary judgment. The district court granted defendants' motions for summary judgment and declined to exercise supplemental jurisdiction over the state law claims. *Morris v. City of Detroit*, No. 17-13415 (E.D. Mich. Mar. 20, 2019). This appeal followed.

---

Ms. Morris is the only witness who provided any evidence of what occurred . . . the Court must acquit the defendant of all charges, and dismiss this matter with prejudice."

## II.

### A. <u>Claims Against Adams</u>

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a person, (2) acting under color of state law, (3) deprived him or her of a constitutional right. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). The issue in dispute is whether Adams was "acting under color of state law" when she went to plaintiffs' home and discharged her revolver. Plaintiffs contend that Adams was acting under color of law because she had her department-issued badge, service revolver and handcuffs, and she was on duty because her shift did not end until 6:00 pm.

When determining whether a person acted under color of state law, "[t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.'" *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) (quoting *Johnson v. Hackett*, 284 F. Supp. 933, 937 (E.D. Pa. 1968)). We consider certain factors when deciding whether an officer was acting under color of state law, such as whether the officer flashed a badge, identified himself as a police officer, placed an individual under arrest, intervened in a dispute between third parties pursuant to a duty imposed by police-department regulations, *Memphis, Tenn. Area Local Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (citing *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980)), or used state-issued equipment. *Layne*, 627 F.2d at 13. Courts must consider the totality of the circumstance in determining whether an officer was acting under color of law at the time of the alleged constitutional violation. *See, e.g., Neuens v. City of Columbus*, 303 F.3d 667, 671 (6th

Cir. 2002). "Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Stengel*, 522 F.2d at 441.

Taking the facts in the light most favorable to plaintiffs, we assume that Adams was on duty, even though she had clocked out at 4:00 pm before going to plaintiffs' home. She was scheduled to work until 6:00 pm that day, and the police investigation report found that she was on duty. Adams was not in uniform when she went to plaintiffs' house, but she had her badge, handcuffs and service revolver with her. The only item she used during the incident was her service revolver.

Although Adams used her gun, which was state-issued equipment, she did not manifest the requisite showing of state-granted authority to act under color of law. The sole purpose for Adams being at Morris' house was to collect a personal debt of $300. Adams did not purport to be conducting police-related business, nor did she attempt to use her status as a police officer advantageously during the altercation. The fact that Adams used her department-issued weapon during a private dispute is not enough to establish she was acting under color of law. "To hold otherwise would create a federal cause of action out of any unauthorized use of a police-issue weapon, without regard to whether there are any additional circumstances to indicate that the officer was exercising actual or purported police authority." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994).

Plaintiffs' argument against Adams is based entirely on the fact that Adams had department-issued equipment with her, including her badge and service revolver, and the fact that she was technically on duty, even though she had clocked out for the day. The purely private altercation between Morris and Adams does not possess the necessary indicia of authority to find

that Adams was acting under color of law.[2]  Because the undisputed facts demonstrate that Adams was not acting "under color of law," plaintiffs cannot demonstrate a necessary element of a constitutional violation and their claims must fail.

### B.  Claims Against the City of Detroit

Plaintiffs contend that the City of Detroit should be held liable for Adams' actions because it failed to properly train and supervise Adams, and that it permits officers to carry guns when off duty.  It is well settled that there can be no *respondeat superior* municipal liability under 42 U.S.C. § 1983.  However, in *Monell v. Department of Social Services.*, 436 U.S. 658 (1978), the Supreme Court held that § 1983 permits suit against a municipality if the municipality's custom or policy caused a constitutional violation.  We have repeatedly recognized that "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

In order to determine whether a government or municipality is liable for a § 1983 violation, a two-part test is applied.  First, a plaintiff must show that he suffered the deprivation of a constitutional right.  If an underlying constitutional violation exists, the plaintiff must show that the alleged deprivation occurred at the hands of the actor, while acting under color of state law.  Second, a municipality can be liable for such a violation only if the plaintiff can show that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir.

---

[2]Adams' conduct was the definition of the ancient concept of "frolic."  The general principle of the concept of "frolic" remains intact today, and vicarious liability arises only with respect to conduct that in part at least is in furtherance of the employer's business.  Restatement (Second) Agency, § 235.  "If the agent is off on a frolic of its own, in a situation where the principal has neither given the agent authority to act for it nor done anything to suggest to others that the agent has such authority, and in the absence of ratification, courts do not ordinarily treat the act of the agent as the act of the principal." *Abbott Labs. v. McLaren Gen. Hosp.*, 919 F.2d 49, 52 (6th Cir. 1990); *Carroll v. Hillendale Golf Club, Inc*., 144 A. 693 (Md. Ct. App. 1929) ("Where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be on a frolic of his own, the master is no longer answerable for the servant's conduct.") (internal quotation marks omitted).

2007) (quoting *Monell*, 436 U.S. at 694). Liability must be predicated on more than allegations that a municipal employee employs a tortfeasor.

Plaintiffs' Fourth and Fourteenth Amendment claims require Adams to be a state actor, which in turn requires her to have acted under color of law. However, as discussed above, Adams was not acting under color of law. Consequently, the City cannot be liable for Adams' personal actions not taken under color of state law, and plaintiffs' claims against the City fail. We also note that plaintiffs challenge the reasonableness of the City's policies that permit off-duty officers to carry state-issued firearms. But § 1983 does not authorize municipal liability based on the purely private actions of an officer without an underlying constitutional claim. We agree that the City of Detroit is entitled to summary judgment on Counts I-IV of plaintiffs' complaint.

For the foregoing reasons, we affirm the judgment of the district court.